## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| GRAND ISLE GAMES, LLC, | ) ) ) | Case No.: 3:25-cv-00390 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Judge: Aleta A. Trauger |
| THE ENTITIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS LISTED ON SCHEDULE A, | ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### I.      INTRODUCTION

1.      Plaintiff Grand Isle Games, LLC is a manufacturer and seller of a popular consumer product—Q-Less®, The Crossword Solitaire Game—that has recently garnered widespread success.

2.      Defendants—an array of entities, partnerships, and unincorporated associations—operate online storefronts offering illegal knockoffs of Plaintiff's product, damaging Plaintiff's reputation and diverting legitimate sales.

3.      To combat Defendants' ongoing misconduct, Plaintiff brings this action seeking injunctive relief, damages, and an immediate end to Defendants' scheme to profit from counterfeit goods.

### II.      NATURE OF THE CASE

4.      Plaintiff is the owner of valuable intellectual property associated with the Q-Less® product, including federally registered trademarks, copyrights, and distinctive trade dress.

5.     Plaintiff diligently developed, promoted, and sold Q-Less®, expanding its market presence through conventional retail avenues and online channels.

6.     With increased visibility and commercial success, Plaintiff discovered that Defendants were advertising and selling counterfeit versions of Q-Less®, bearing unauthorized reproductions of Plaintiff's registered marks, trade dress, and copyrighted materials.

7.     Defendants' conduct has resulted in serious consumer confusion, eroded Plaintiff's goodwill, and inflicted significant financial harm.

8.     Plaintiff seeks injunctive relief, damages, and other remedies to halt the ongoing infringement, recover lost revenues, and protect unsuspecting consumers from the purchase of counterfeit goods.

### III.     THE PARTIES

9.     Plaintiff Grand Isle Games, LLC is an entity engaged in the design, manufacture, and sale of consumer products, based in Nashville, Tennessee.

10.     Defendants are the entities, partnerships, and unincorporated associations identified in Schedule A, which is being filed under seal. On information and belief, Defendants are engaged in manufacturing, advertising, distributing, and/or selling counterfeit products bearing infringing marks and trade dress, and marketed through the infringing use of copyrighted materials, belonging to Plaintiff.

### IV.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendants because they conduct business in this District and/or intentionally direct infringing conduct toward consumers in this District, including sales of counterfeit goods shipped into the District.

13. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in, or were directed to, the Middle District of Tennessee.

14. In addition, Defendants specifically target consumers within this District by offering to sell and ship infringing products into this forum.

**V.    FACTUAL BACKGROUND**

15. Prior to 2017, Plaintiff's founder, Tom Sturdevant, conceived of a unique puzzle-style consumer product aimed at casual and hobbyist audiences, which became the Q-Less® game.

16. Q-Less® is played by rolling twelve specially designed, six-sided dice, each face of which includes a letter of the alphabet. The aim of the game is to complete a valid crossword solution using all twelve dice.

17. Plaintiff's founder spent considerable time refining the product's concept, ultimately securing a federal trademark registration for Q-Less® in 2020 for use with dice games. Plaintiff owns U.S. Trademark Registration No. 6,038,633 pertaining to the Q-Less® game, which is valid and in force. A true and correct copy of the trademark registration certificate is attached as Exhibit A.

18. Additionally, Plaintiff owns U.S. copyright registrations for multiple copyrighted works, including product photos and videos used for marketing and promotion of the product, as

well as the expressive and nonfunctional elements of combined text-and-image works reciting the rules to the Q-Less® game.

19.     Q-Less® is packaged in distinctive trade dress, including a cylindrical tin with the slogans "THE CROSSWORD SOLITAIRE GAME", "TWELVE DICE", and "SERIOUS FUN" printed atop the tin around the rim. The tin was silver with a sticker bearing the mark and slogans until a product redesign, resulting in an all-beige tin, in June 2024. The original (left) and new (right) designs are reproduced here:



20.     Plaintiff's founder invested in a small-scale manufacturing process, assembling initial units by hand and distributing them through local channels.

21.     In late 2019, Plaintiff's founder introduced Q-Less® to broader markets and began tracking steady sales.

22.     Over the next year, consumer interest gradually increased, partly due to positive word-of-mouth and occasional appearances at trade shows.

23.    In 2021, Q-Less® gained unexpected viral attention on TikTok, driving a significant surge in demand.

24.    This surge led to intermittent inventory shortages, causing many prospective customers to face longer lead times or unavailability.

25.    Plaintiff was founded in 2022. Between 2022 and 2023, Plaintiff increased production volumes multiple times to satisfy the growing number of orders.

26.    Despite increasing inventory, stock ran out again in late 2023 due to heightened consumer enthusiasm and holiday season pressures.

27.    In early 2024, Plaintiff began negotiating with new manufacturing partners to accommodate larger-scale production and streamline fulfillment.

28.    By mid-2024, Plaintiff arranged for overseas manufacturing to expedite production and improve distribution.

29.    Shortly after expanding production capacity, Plaintiff learned of online sellers offering near-identical knockoffs of its product.  On information and belief, manufacturers of the knockoff products received and misappropriated art files belonging to Plaintiff, enabling them to manufacture products that mimic the distinctive appearance of the genuine Q-Less® product.

30.    Many of the knockoff products bear the federally registered Q-Less® mark, or a confusingly similar mark.

31.    Many of the knockoff products mimic the distinctive trade dress of the genuine product by including the distinctive slogans "THE CROSSWORD SOLITAIRE GAME", "TWELVE DICE" and "SERIOUS FUN" arranged around the rim of the circular tin as in the genuine product.  Many of the knockoff products additionally include a beige or silver circular tin, appropriating the trade dress of the genuine product.

32.     Many of the online product listings for the knockoff products use the federally

registered mark, or a confusingly similar variant of the registered mark such as "Q-Missing", to

identify or describe the knockoff product.  A true and correct screenshot of such a product is

reproduced below:



33.     Many of the online product listings for the knockoff products appear in Internet

searches or e-commerce site searches for the registered mark, and the corresponding Defendants

thereby purposefully avail themselves of the goodwill of the registered mark. A true and correct

screenshot of an Amazon.com search for "Q-Less" is reproduced below:



34.     Some of the online product listings for the knockoff products appear as sponsored advertisements when the registered mark is searched, and the corresponding Defendants thereby purposefully avail themselves of the goodwill of the registered mark.

35.     Plaintiff discovered these unauthorized sellers on various e-commerce platforms and social media marketplaces.

36.     Many unauthorized listings display images, text, and/or videos that closely mimic and/or are derived from Plaintiff's copyrighted promotional materials, including Plaintiff's rules text interspersed with dice graphics, images, and videos.

37.     Plaintiff also identified false or misleading advertisements claiming that the knockoff goods were official or otherwise linked to Plaintiff.

38.     Consumer confusion increased, as evidenced by negative reviews and direct inquiries from individuals who believed they had purchased Plaintiff's genuine Q-Less® product.

39.     Plaintiff's investigation revealed that multiple entities, often based overseas, set up impromptu online storefronts to sell these infringing goods.

40.     Last fall, Plaintiff determined that approximately 60 such stores were operating concurrently and suspected more might be launched under new names.

41.     To date, Plaintiff has identified 233 unique stores selling counterfeit products or infringing its intellectual property rights in conjunction with the sale of products.

42.     The influx of counterfeit goods has damaged Plaintiff's goodwill and undermined the genuine Q-Less® product's reputation for quality.

43.     On information and belief, many Defendants are foreign entities with minimal United States assets that can be seized to satisfy a judgment, aside from money held in their marketplace accounts with various e-commerce platforms and other financial accounts with US-based payment processors.

44.     Plaintiff has no adequate remedy at law.

## VI.     ADDITIONAL FACTUAL BACKGROUND

### A.  The Defendant Enterprise: A Coordinated Scheme of Counterfeiting and Infringement

45.     Upon further investigation, Plaintiff has discovered that the entities defined in the subsequent paragraph as the RICO Defendants, though purporting to be separate entities, are in fact associated in a common scheme and illegal enterprise, operating a coordinated network of online storefronts to traffic in counterfeit goods and infringe Plaintiff's and others' intellectual property for commercial gain at Plaintiff's expense.

46.     The RICO Defendants include:

- **Nanchang Yangfa Technology Co., Ltd.,** which operates the website Notionnovel.com and has operated the "Notionnovel.16" Instagram account, and is identified as Defendant No. 19 on Schedule A.

- **Larryhot Trading Co., Ltd.**, which operates the websites Bamaxisboon.com and Concertchop.com and has operated the Concertchop.ON07 and Bamaxisboon_hhh Facebook pages, and is identified as Defendant Nos. 22 and 27 on Schedule A.

- **Mind E-Commerce Co., Limited**, which operates the websites Classupery.com, Beyonddraw.com, and Interestcen.com, and has operated the Facebook pages Classupery, Beyonddraw.AW05, and Interestcen, and is identified as Defendant Nos. 24, 28, and 29 on Schedule A.

- **Shenzhen Aaili Network Technology Co., Ltd.**, which operates the website Repertoireof.com and has operated the Facebook page Repertoireof, and is identified as Defendant No. 25 on Schedule A.

- **Suzhou Ruoxing Network Technology Co., Ltd.**, which operates the website Communicaten.com and has operated the Facebook page Communicaten_UR, and is identified as Defendant No. 26 on Schedule A.

- **Nanchang Laifei Technology Co., Ltd.**, which operates the website Thrivenget.com and has operated the Facebook page Thrivenget.NG, and is identified as Defendant No. 32 on Schedule A.

**B. Shared Characteristics Demonstrating the Enterprise and its Coordinated Nature**

47. The RICO Defendants' websites, despite being ostensibly operated by different corporate entities, exhibit a highly similar look and feel, including substantially identical font choices, design layouts, and overall aesthetic. This uniformity indicates a centralized design template or shared resources, reflecting a coordinated effort rather than independent actions.

48.     Further evidence of the RICO Defendants' coordinated scheme is found in their financial operations.  Each RICO Defendant accepts payment via PayPal on its website. The PayPal client IDs extracted from PayPal payment buttons on each RICO Defendant's website are identical, although the merchant IDs differ between entities. This identical client ID indicates that while each individual defendant entity may possess a distinct merchant ID for transactional tracking, all payment processing is centrally administered through a single PayPal Business or Partner account, to which the shared client ID pertains. This shared financial infrastructure is an indicator of a unified and organized enterprise.

49.     The coordination extends to the registration details for the RICO Defendants' payment processing accounts. Specifically, Plaintiff has discovered that Mind E-Commerce Co., Limited and Larryhot Trading Co., Ltd. have both associated their PayPal merchant accounts with the same physical address: FLAT/RM 705,7/F,FA YUEN COMM BLDG NO.75,FA YUEN STREET,MONG KOK，KL, 旺角, 九龍, HK. This shared registration address for multiple seemingly distinct corporate defendants demonstrates a direct, tangible link and shared operational base within the enterprise.

50.     Moreover, the email addresses utilized by multiple RICO Defendants for their PayPal registrations display a common algorithmic generation pattern. For example, Thrivenget.com's associated email is laJadecchowe@outlook.com, while Bamaxisboon.com's is RnalemoaBtn@outlook.com. The highly similar, non-sensical, and likely algorithmically generated nature of these email addresses suggests that they were created and assigned by a common source or system, further evidencing a unified operational approach across the enterprise.

51. The RICO Defendants' cash flow patterns further suggest a coordinated enterprise. Each RICO Defendant's PayPal account was created in 2022 or 2023 and holds a cash balance in US dollars and/or foreign currency. The six PayPal accounts frozen by Plaintiff and belonging to the RICO Defendants are unusual among the frozen PayPal accounts in this case, and unique among all such accounts with any substantial balance: the "total amount sent" entries in Paypal's account summary are 0 for each of them. On information and belief, these accounts function primarily as collection points for proceeds from the racketeering activity, rather than as operational accounts for a legitimate business.

### C. Pattern of Racketeering Activity: Criminal Copyright Infringement

52. As part of their enterprise, each RICO Defendant corporate entity, through its associated website(s) and promotional activities, has engaged in repeated acts of criminal copyright infringement, in violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319, which constitute predicate acts of racketeering activity under 18 U.S.C. § 1961(1)(B).

53. Each RICO Defendant has willfully infringed Plaintiff's registered copyrights, including, but not limited to, Plaintiff's proprietary marketing videos and/or photos, for purposes of commercial advantage and private financial gain. Plaintiff holds valid and subsisting copyrights in these materials, including Registration Numbers PA 2-511-999 and VA 2-433-087.

54. Specifically, and by way of example, the notionnovel.16 Instagram page (operated by Nanchang Yangfa Technology Co., Ltd.) copied Plaintiff's copyrighted "Q-Less® Back in Stock" video and used it in its advertisements for counterfeit products. In this video, Plaintiff's founder, Tom Sturdevant, states that "As many of you know, ripoffs, knockoffs, of Q-Less® are available in many, many places. They are even using our photos and our videos that we have posted on social media in their ads . . . it's a nuisance for us, our family business who values our

reputation. So we are taking steps to address the violations of our intellectual property." A true and correct screenshot of the infringing advertisement is reproduced here:



55.    Furthermore, each RICO Defendant entity, through its associated Facebook and/or Instagram page, copied and utilized video content created by Q-Less® TikTok content affiliate Angela_lynn33 without authorization. This content was incorporated into the RICO Defendants' Instagram and/or Facebook advertisements to promote and sell counterfeit Q-Less® products. Each such advertisement made use of identical ad copy. True and correct screenshots of the RICO Defendants' use of this content are reproduced here:









56.     These acts of unauthorized reproduction, distribution, and public performance of Plaintiff's and its content affiliate's copyrighted materials were undertaken knowingly, willfully, and for the express commercial purpose of inducing consumers to purchase counterfeit products, thereby generating illicit revenue for the enterprise. Each such unauthorized use constitutes a separate instance of criminal copyright infringement.

**D.  Pattern of Racketeering Activity: Criminal Trademark Counterfeiting**

57.     In furtherance of their enterprise, each RICO Defendant corporate entity, through its associated website(s) and promotional activities, has also engaged in repeated acts of criminal

trademark counterfeiting, in violation of 18 U.S.C. § 2320, which constitute predicate acts of racketeering activity under 18 U.S.C. § 1961(1)(B).

58.     The RICO Defendants, knowingly and with intent to traffic in goods and services, used a counterfeit mark on or in connection with goods and services, where such use was likely to cause confusion, mistake, or deception. Plaintiff's federally registered trademark Q-Less® (U.S. Trademark Registration No. 6,038,633) is valid and in full force.

59.     Each RICO Defendant entity and its associated website(s) and social media pages, including Notionnovel.com, Bamaxisboon.com, Concertchop.com, Classupery.com, Beyonddraw.com, Interestcen.com, Repertoireof.com, Communicaten.com, and Thrivenget.com, intentionally used Plaintiff's registered Q-Less® mark, or a colorable imitation thereof, in their product listings, website displays, and/or online advertisements. This was done to deceive consumers into believing they were purchasing authentic Q-Less® products or products affiliated with Plaintiff.

60.     The RICO Defendants used the counterfeit mark "in connection with" goods or services at least by displaying it within product images, descriptions, and/or promotional text on the defendants' websites and in their social media advertising.  The RICO Defendants thus used the mark in the commercial context of selling the goods.

61.     Each instance of trafficking or attempting to traffic in goods or services knowingly using Plaintiff's counterfeit mark constitutes a separate and distinct act of criminal trademark counterfeiting.

### E.  Injury to Plaintiff

62.     By reason of the aforementioned pattern of racketeering activity and the defendants' conduct of the affairs of the enterprise, Plaintiff has suffered and continues to suffer

significant injury to its business and property, including, but not limited to, lost sales, diminution of brand value, damage to goodwill and reputation, and substantial expenses incurred in attempting to combat the defendants' illegal activities. This injury is direct and causally related to the defendants' racketeering activities.

**COUNT I**

**(Trademark Infringement – 15 U.S.C. § 1114)**

**Against Specified Trademark Infringement Defendants on Schedule A**

63.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

64.     Plaintiff owns a valid and subsisting federal registration for a distinctive trademark, Q-Less® (the "Mark"), which appears on its product, packaging, and marketing materials.

65.     Defendants, without Plaintiff's authorization, have used and continue to use in commerce a mark identical to or confusingly similar to Plaintiff's Mark in connection with the sale and/or offering for sale of counterfeit versions of Plaintiff's product.

66.     Defendants' actions are likely to cause and have caused consumer confusion, and are likely to cause and have caused mistake or deception as to the source, affiliation, or sponsorship of Defendants' counterfeit goods.

67.     Defendants have infringed Plaintiff's federally registered Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     Defendants' unlawful activities have caused, and will continue to cause, irreparable harm to Plaintiff unless preliminarily and permanently enjoined.

## COUNT II

### (Trade Dress Infringement – 15 U.S.C. § 1125(a))

### Against Specified Trade Dress Infringement Defendants on Schedule A

69.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

70.     Plaintiff's product is sold in packaging featuring a distinctive appearance, including a circular beige and/or silver tin and slogans (the "Trade Dress"), which is non-functional, has acquired secondary meaning, and serves to identify Plaintiff as the source of the product.

71.     Defendants are using counterfeit or imitation packaging that copies the overall look and feel of Plaintiff's Trade Dress, thereby causing confusion or mistake regarding the source or sponsorship of the goods.

72.     Defendants' conduct constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.     As a direct and proximate result of Defendants' actions, Plaintiff has been irreparably harmed and has no adequate remedy at law.

## COUNT III

### (Copyright Infringement – 17 U.S.C. § 501)

### Against Specified Copyright Infringement Defendants on Schedule A

74.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

75. Plaintiff owns valid copyrights in the product's promotional images, videos, combined text and image works, and other original content (the "Copyrighted Works"), which have been registered by the Copyright Office.

76. Defendants have reproduced, distributed, made derivative works of, and otherwise used Plaintiff's Copyrighted Works without authorization in online listings and advertisements. Some Defendants have infringed the Copyrighted Works after the registration of the works.

77. Defendants' unauthorized use of the Copyrighted Works violates the exclusive rights granted to Plaintiff under 17 U.S.C. § 106 and constitutes copyright infringement under 17 U.S.C. § 501.

78. Defendants' conduct has caused damages and other harm to Plaintiff, which entitles Plaintiff to injunctive relief, statutory damages or actual damages, and other remedies.

## COUNT IV

### (Unfair Competition – Tennessee Common Law)

### Against Specified Unfair Competition Defendants on Schedule A

79. Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

80. By marketing and selling counterfeit or knockoff versions of Plaintiff's product, Defendants have engaged in unfair competition under Tennessee common law.

81. Defendants' actions mislead consumers into believing the infringing goods originate from, or are associated with, Plaintiff, causing confusion and harm to Plaintiff's business reputation.

82. Defendants' actions were and are willful, intentional, and/or undertaken with reckless disregard for Plaintiff's rights.

83. As a direct result of Defendants' unfair competition, Plaintiff has suffered and continues to suffer irreparable injury and monetary damages.

## COUNT V

## Racketeer Influenced and Corrupt Organizations Act ("RICO") – 18 U.S.C. § 1964(c)

## Against Specified RICO Defendants in Paragraph 46

84. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

85. This claim is brought against all RICO Defendants identified in Paragraph 46 as participants in the enterprise.

86. Under 18 U.S.C. § 1962(c), it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

87. The RICO Defendant corporate entities identified in Paragraph 46 are "persons" within the meaning of 18 U.S.C. § 1961(3).

88. The RICO Defendants are associated with an "enterprise" as defined by 18 U.S.C. § 1961(4). This enterprise is an "association-in-fact" consisting of the defendant corporate entities and their related websites and social media accounts, united by a common purpose: to illegally profit from the widespread sale of counterfeit Q-Less® products and the systematic infringement of Plaintiff's and its content affiliates' intellectual property. The enterprise has an ascertainable structure, including shared financial infrastructure (identical PayPal client IDs, overlapping PayPal registration address) and common operational characteristics (uniform website design, identical advertising copy, algorithmic email patterns).

89. The activities of this enterprise affect interstate and foreign commerce, given the defendants' global operations, their targeting of U.S. consumers, their use of U.S.-based payment processors like PayPal, and the resulting injury to a U.S.-based company.

90. Each RICO Defendant has conducted or participated, directly or indirectly, in the conduct of the affairs of this enterprise. Their conduct includes, but is not limited to, establishing and operating websites, engaging in advertising, selling and shipping counterfeit goods, and actively engaging in the predicate acts described herein.

91. The RICO Defendants have conducted the affairs of the enterprise through a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5). This pattern consists of numerous predicate acts of "racketeering activity" under 18 U.S.C. § 1961(1), specifically:

- **Criminal copyright infringement**, in violation of 17 U.S.C. § 506(a) and 18 U.S.C. § 2319, including, but not limited to, the copying of Plaintiff's copyrighted marketing videos and photos, and the reproduction of Q-Less® TikTok content by all defendants for commercial gain.

- **Criminal trademark counterfeiting**, in violation of 18 U.S.C. § 2320, including the knowing use of Plaintiff's counterfeit Q-Less® mark in product listings and advertisements by all defendants.

92. These predicate acts are related to each other because they share the same common purpose (selling counterfeit products), victims (Plaintiff and U.S. consumers), and methods (using infringing websites and identical advertising copy).

93. These predicate acts amount to, or pose a threat of, continued criminal activity. The enterprise's operation of multiple distinct websites over an extended period, its sophisticated

coordination, and its continued efforts to evade detection demonstrate open-ended continuity and an ongoing business model structured for repetition.

94.    As a direct and proximate result of the RICO Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property, as detailed in Paragraph 62, and is entitled to treble damages, costs, and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

95.    Plaintiff is further entitled to an equitable disgorgement of racketeering proceeds.

## COUNT VI

### RICO Conspiracy – 18 U.S.C. § 1964(d)

### Against Specified RICO Defendants in Paragraph 46

96.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

97.    This claim is brought against all defendants identified in Paragraph 46 as co-conspirators.

98.    Under 18 U.S.C. § 1962(d), it is unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

99.    The RICO Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity.

100.    Each defendant entered into an agreement with one another, or with other co-conspirators known and unknown to Plaintiff, to participate in the conduct of the affairs of the association-in-fact enterprise through the commission of criminal copyright infringement and criminal trademark counterfeiting.

101.     The conspirators understood the general nature of the scope of the enterprise and implicitly or explicitly agreed that one or more co-conspirators would commit at least two predicate acts that would constitute a pattern of racketeering activity. This agreement is evidenced by the shared PayPal client ID, the common PayPal registration address, the algorithmic email patterns, and the highly similar website designs and ad copy utilized across all defendants.

102.     As a direct and proximate result of the defendants' conspiracy to violate 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property, as detailed in Paragraph 62, and is entitled to treble damages, costs, and reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor against all Defendants, and award relief including, but not limited to:

A. **Preliminary and Permanent Injunctions** enjoining Defendants from manufacturing, importing, advertising, or selling counterfeit or knock-off products bearing Plaintiff's marks or trade dress, and from using Plaintiff's copyrighted material to market their products;

B. **An ex parte Temporary Restraining Order** to freeze Defendants' financial accounts and restrain further transfer of assets;

C. **An Order** requiring Defendants to disable and/or remove the counterfeit product listings from the stores identified in Schedule A and any other listings that infringe Plaintiff's intellectual property;

D. **Statutory, Compensatory, and/or Treble and Punitive Damages** arising out of Defendants' infringement and unfair competition, including costs, attorneys' fees, and interest where authorized by law;

E. **Under 18 U.S.C. § 1964(c), a recovery of threefold the damages** sustained by Plaintiff due to the RICO Defendants' violations of 18 U.S.C. §§ 1962(c) and 1962(d), along with an equitable disgorgement of racketeering proceeds, the costs of this suit, and reasonable attorneys' fees;

F. **Any other and further relief** that the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,


*/s/G. Edward Powell III*
Chanelle Acheson (TN BPR #30008)
W. David Bridgers (TN BPR #16603)
G. Edward Powell III (CA Bar #324530)
**Waddey Acheson LLC**
1030 16th Ave S, Suite 300
Nashville, TN 37212
615-839-1100
ed@waddeyacheson.com


Counsel for Plaintiff Grand Isle Games, LLC