# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

_____

GRAND ISLE GAMES, LLC,

        Plaintiff,

v.

THE ENTITIES, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
LISTED ON SCHEDULE "A,"

        Defendants

_____

Case No. 3:25-cv-00390

Judge Aleta A. Trauger

## **DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF LAW**

Defendant No.19 Notionnovel.com, owned and operated by Nanchang Yangfa Technology Co., Ltd. ("Notionnovel"), by and through its counsels, move for a dismissal of the action as to and against Notionnovel.

## PRELIMINARY STATEMENT

Plaintiff's lawsuit suffers from jurisdictional and pleading defects that require dismissal. First, Plaintiff failed to properly serve Notionnovel under the Hague Service Convention, the exclusive mechanism for serving Chinese entities. Email service—the method Plaintiff employed—is expressly prohibited under both Chinese law and the Convention. Without valid service, this Court lacks jurisdiction.

Second, Plaintiff's attempt to transform what is, at most, a routine online infringement dispute into a sprawling civil RICO action highlights the overreach at the heart of this case. RICO is an extraordinary remedy, yet Plaintiff has not pled the existence of any enterprise, predicate acts, or concrete injury. Courts consistently reject such speculative efforts to recast ordinary commercial disputes as racketeering.

For these reasons, and as explained below, the Court should dismiss Plaintiff's claims in their entirety.

## I. THE CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(4)

Pursuant to Fed. R. Civ. P. Rule 12(b)(4), an action must be dismissed if the service of process is insufficient.

Notionnovel was served by "electronic publication" or by "e-mail." (Ecf. No. 119-1).

Notionnovel is a Chinese entity and China is a signatory to the Hague Convention. As such, service on it must comply with the provision of the Hague Convention. By the plain language and structure of the Hague Convention, a form of service not explicitly permitted is barred unless

agreed to by the subject country. China has not agreed to service via e-mail and therefore a Chinese entity cannot be served via e-mail.

*Alternatively*, Article 10 of the Hague Convention contains a provision which governs service via "postal channels." To the extent that service via e-mail *would be* allowed under the Hague Convention, the only applicable provision would be Article 10. However, China has expressly objected to permitting service in China via postal channels. Therefore, service via e-mail is not allowed in China even if it is allowed under Article 10 of the Hague Conventions generally.

Lastly, even if the Court takes the position that the Hague Convention does generally allow service by email, service via e-mail is forbidden in China as China has expressly stated that service via e-mail is not allowed under Chinese law.

For these reasons, service of process on Notionnovel have not been sufficient and this action must be dismissed.

### A. Fed. R. Civ. P. 4(f)(1) Mandates that Service be Performed by "Internationally Agreed Means of Service"

Fed. R. Civ. P. 4(f) provides:

"Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
 (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
 (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
 (C) unless prohibited by the foreign country's law, by:
  (i) delivering a copy of the summons and of the complaint to the individual personally; or

> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders."

Both China and the United States are "Contracting States" of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention").[1]

Therefore, service on a Defendant in China, in compliance with Fed. R. Civ. P. 4(f)(1), must be performed "by any internationally agreed means of service" and, therefore, must be in compliance with the Hague Convention.

Further, Fed. R. Civ. P. 4(f)(3) only permits service on a Defendant in China in a form "not prohibited by international agreement." Plaintiff's chosen form of service is prohibited by the Hague Convention unless the country in question permits it.

## B. The Hague Convention Does Not Allow for Service by E-Mail Unless the Country in Question Permits It

The language and structure of the Hague Convention outlines a number of specific methods of service which are expressly permitted, and creates a system that allows countries to voluntarily agree to certain other additional means of service.

Article 2 of the Hague Convention provides:

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organise the Central Authority in conformity with its own law.

Article 3 of the Hague Convention provides:

The authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legalisation or other equivalent formality. The document to be served or a copy thereof shall be annexed to the request. The request and the document shall

---

[1] *See* https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

both be furnished in duplicate.

Article 5 of the Hague Convention provides:

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
a)  by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
b)  by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.
Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily.  If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.  That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

Article 8 of the Hague Convention provides:

Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents.  Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

Article 9 of the Hague Convention provides:

Each Contracting State shall be free, in addition, to use consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose.  Each Contracting State may, if exceptional circumstances so require, use diplomatic channels for the same purpose.

Article 10 of the Hague Convention provides:

Provided the State of destination does not object, the present Convention shall not interfere with –
a)  the freedom to send judicial documents, by postal channels, directly to persons abroad[2],
b)  the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c)  the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other

---

[2]  China opted out of Section (a) of Article 10 by filing an objection.  *See* https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

competent persons of the State of destination.

Article 11 of the Hague Convention provides:

The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Article 14 of the Hague Convention provides: "Difficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels."

Article 19 of the Hague Convention provides:

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*See* https://www.hcch.net/en/instruments/specialised-sections/service.

The plain texts of the Hague Convention make it very clear how the Hague Convention is structured. First, the authorized method of service of process is specified under Article 5 by service through a "Central Authority" designated pursuant to Article 3 in each "Contracting State." *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275, 137 S. Ct. 1504, 1508 (2017) (finding that "[t]he primary innovation of the Hague Service Convention…is that it "requires each state to establish a central authority to receive requests for service of documents from other countries"); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022).

Second, each "Contracting State" is only permitted to allow additional methods of service upon parties located in other Contracting States as specified under Article 8 (service through diplomatic and consular agents), Article 9 (service through consular channels), Article 10 (service through postal channels and judicial officers), and Article 11 (other methods of service mutually agreed upon) if the other Contracting State has opted in or otherwise does not opt out of the Articles. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275–76, 137 S. Ct. 1504, 1508 (2017); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022); *see Facebook, Inc. v. 9 Xiu*

6

*Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020).

Third, any difficulties in connection with the service of process must be "settled through diplomatic channels" pursuant to Article 14.

Fourth, Article 19 allows a "Contracting State" the option to unilaterally permit additional methods of service of process "coming from abroad," but no Article allows any "Contracting State" the option to unilaterally permit additional methods of service of process "going abroad." *See Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020).

Accordingly, the only "other means" of service of process "not prohibited by [the Hague Convention]" that a court may permit R. Civ. P. 4(f)(3) are the means of service allowed under Article 8, Article 9, Article 10, Article 11 and Article *19 if the other Contracting State has opted in or otherwise not opted out of that Article*.

The Hague Convention is *not* drafted in a way to allow all possible methods of service by default, and then "prohibit" methods of service articulated in Articles 8, 9, 10, 11, and 19 when a Contracting State objected to that article.

Rather the Hague Convention is drafted such that email service is prohibited *unless* the Country in question permits it under Article 11.

### C. Courts in the United States May Not Permit Service in a Manner Inconsistent with Federal Treaty

To the extent that Plaintiff argues that service via email is permitted under Fed. R. Civ. P. 4(f)(3), Rule 4 cannot authorize service of process in "a manner inconsistent with a federal treaty." *Harris v. Browning-Ferris Industries Chemical Services, Inc.*, 100 F.R.D. 775, 777–78 (M.D. La. 1984) (explaining that "[b]ecause the Hague Convention is specific as to how service is to be made in a foreign country and the Federal Rules are general and designed to cover all circumstances, the Court finds that the provisions of the Hague Convention must control the manner of service" in an

7

action where the Hague Convention applies); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022) ( "Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email. And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.").

To the contrary, the organization of the Hague Convention is to designate specific methods of service that all "Contracting States" agreed to (Article 5), and then designate additional methods of service that the Contracting States may opt in and opt out (Articles 8 to 11). *See Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020) (explaining that "the Convention's structure…enumerates particular methods for serving documents abroad" and the Convention's text "states that the Convention 'shall apply in all cases…where there is occasion to transmit a…document for service abroad," and therefore "[t]he Convention…doesn't simply offer…options that plaintiffs can resort to or not at their discretion…[r]ather, **the Convention-delineated methods of service…are exclusive**") (emphasis added).

Therefore, by definition the Hague Convention prohibits all other methods of services not referenced. *See e.g. Water Splash, Inc. v. Menon*, 581 U.S. 271, 273, 137 S. Ct. 1504, 1507 (2017) (holding that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies"); *Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, *6 (S.D.N.Y. 2023) docket number 1:23-cv-00612 (stating that "[o]mission of a particular method of service from the Convention cannot be read to implicitly authorize that method"); *see Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Il. 2019) (*citing Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 108 S. Ct. 2104, 2107–08 (1988) ("**The Supreme Court has stated that the**

drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text") (emphasis added); *see Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, 2019 U.S. Dist. LEXIS 178264, *3 (M.D. Fla. 2019) docket number 2:2019cv00109 (concluding that "the Hague Convention's silence on a method of service does not make it permissible").

As China has *objected* to service via e-mail, it is therefore impermissible for a party located in China to be served via email.

### D. China has Objected to Service via Postal Channels which Extends to E-Mails

In addition, not only has China *not* consented to service via e-mail China has *specifically objected* to service via e-mail through its objections to service via postal channels.

As mentioned, Article 10 of the Hague Convention allows for service "by postal channels" so long as the "State of destination does not object." China has opted out of Section (a) of Article 10 by filing an objection. See https://www.usmarshals.gov/what-we-do/service-of-process/civil-process/hague-convention-service-abroad.

Consequently, there are many well-reasoned precedents across districts holding that therefore service in China via e-mail is prohibited.

In *Luxottica Group S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019), the plaintiff commenced a Schedule A case alleging trademark infringement against several Chinese entities. As the court held in that case, "[b]ecause email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent." However, in addition, the Court also held that "Courts generally approach the problem of email service through the prism of Article 10(a)," that China has objected to service via postal channels, and therefore "China's objections likewise preclude email service." For this reason, service upon the Chinese Notionnovel was improper as it was done via e-mail.

Likewise in *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1385, 1393 (S.D.N.Y.

2022), plaintiff was a "global entertainment company" that brought infringement actions against a number of companies including Notionnovel located in China. The District Court explained in detail that many courts have held "Articles 11 and 19 of the Convention provide some support to the wholesale preclusion of email as a method of service." The District Court also noted that it "need not determine" whether the Hague Convention precludes email entirely because *in addition*, China has objected to service via postal channels and therefore this "necessarily encompass an objection to service via email."

The District Court in *Smart Study* cited to "[r]ecent guidance posted by Supreme People's Court of China" which left "little doubt that China's objection to service by mail would encapsulate service by email." Specifically Article 11 of the Minutes of the National Symposium on Foreign-related Commercial and Maritime Trial Work, which provided guidance for Chinese courts serving litigants outside of China stated: "In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic service, and the people's court shall not adopt electronic service." *Id* at 1395.

## E. China has Explicitly Stated that Its Objection to Postal Service Extends to Service via E-Mail

Furthermore, , China has explicitly stated its objection to postal service extends to service via e-mail, meaning that service via e-mail is not service by other means "not prohibited by international agreement" under Fed. R. Civ. P. 4(f)(3).

As noted in *Smart Study*, guidance posted by Supreme People's Court of China left "little doubt that China's objection to service by mail would encapsulate service by email."

In addition, attached as **Exhibit A** is a notice from the Ministry of Justice of the People's Republic of China, dated March 21, 2025 stating that: "According to China's Civil Procedure Law,

10

a foreign judicial body or individual cannot directly serve documents to a person within China. Such requests should be submitted through the channels specified by treaties or through diplomatic channels, to the Ministry of Justice or the Ministry of Foreign Affairs, for the People's Court of China to serve on their behalf. When China joined the Hague Service Convention, it reserved the right under Article 10, which prohibits serving documents by mail within its territory. **Service by mail includes traditional mail, courier, email, fax, and other methods**."

Therefore even if the Hague Convention was that any method of service is permitted unless specifically objected to, Exhibit A, confirms that China has specifically objected to service by postal channels and has explicitly stated that such objection also encompass service via e-mail.

### F. Many District Courts Have Addressed the Subject at Length, Holding that E-Mail Service is Not Permitted in China

To Notionnovel's knowledge, no court of appeals has directly addressed this legal question, including the Sixth Circuit.

But many District Courts have issued decisions extensively analyzing this matter. *See e.g. Sales v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) (holding that email service is "proscribed by the [Hague] Convention because it is inconsistent with the Convention's authorized service methods"); *Topstone Commc'ns, Inc. v. Xu*, 603 F. Supp. 3d 493, 500 (S.D. Tex. 2022) ("This Court therefore determines that email service is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods."); *James Avery Craftsman, Inc. v. Sam Moon Trading Enters.*, No. SA-16-cv-00463-OLG, 2018 U.S. Dist. LEXIS 219083, at *18 (W.D. Tex. 2018) ("For similar reasons, this Court has significant doubts that any form of email service should have been permitted at the time of Plaintiff's Motion for Alternate Service, and Mascot's failure to return the waiver of service does not alone justify resorting to service by email."); *Xianfeng Wang v. P'ships & Unincorporated*

*Organizations in Schedule A*, No. 8:23-cv-2787-VMC-AAS, 2024 U.S. Dist. LEXIS 191419, at *8 (M.D. Fla. Oct. 22, 2024) ("In short, service by email upon the China-based Defendant is prohibited by the Hague Convention. Thus, email service is not proper here under Rule 4(f)."); *Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, *6–7 (S.D.N.Y. 2023) docket number 1:23-cv-00612 (holding that "service via email and online publication is prohibited by [the Hague Convention] and is impermissible under Rule 4(f)(3)" (cleaned up)); *Schluter Sys., L.P. v. Sanven Corp.*, 2023 U.S. Dist. LEXIS 3069, *19 (N.D.N.Y. 2023) docket number 8:22-CV-155 (holding that "[a]s this Court has determined that the Hague Convention does not permit service by email on Chinese Foreign Nationals, email service is barred by Rule4(f)(4) because it is 'prohibited by international agreement'"); *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.*, 2023 U.S. Dist. LEXIS 102843, *11 (S.D.N.Y. 2023) docket number 1:23-cv-03960 (concluding that "*Smart Study* offers the correct interpretation of the Hague Convention in light of recent Supreme Court precedent," *i.e.*, that service of process by email is prohibited under the Hague Convention); *Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022) (holding that "service by email on defendants located in China is not permitted under the Hague Convention"); *Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020) (holding that "service by email on the China-based defendants…cannot be authorized under Rule 4(f)(3)"); *Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*, 2019 U.S. Dist. LEXIS 178264, *4 (M.D. Fla. 2019) docket number 2:2019cv00109 (holding that "although [the plaintiff] has shown that emails to the identified email addresses are likely to provide actual notice, they are improper methods of service" under the Hague Convention and therefore impermissible under Fed. R. Civ. P. Rule 4(f)(3)); *CRS Recovery, Inc. v. Laxton*, 2008 U.S. Dist. LEXIS 137363, 2008 WL 11383537, at *4 (N.D. Cal. Jan. 8, 2008) (concluding that "[a]n order allowing email service on a defendant located in China would contravene the treaty, and is not permitted under Rule 4(f)(3).").

To the extent that there are cases to the contrary, such decisions were issued prior to the March 21, 2025 notice from the Ministry of Justice of China. As demonstrated in Exhibit A, China has explicitly stated that its objection to service by postal channels extends to service via e-mail.

### G. The Court's Prior Decision on Plaintiff's *ex parte* Application was Determined Without Benefit of Opposition

Plaintiff's original Motion to permit service via email was supported by Plaintiff's alleged urgency and practicality, but failed to provide the Court the relevant law necessary to support the Court's Order (ECF Nos. 11, 17). Defendants' motion herein provides that necessary legal background omitted by Plaintiff's Motion. This legal background (consisting of treaties, Federal Rules, and precedent) explicitly rejects Plaintiff's attempts to serve via e-mail. Now, with the opportunity for full briefing by both parties, the Court is in a better position to assess the propriety of alternative service in light of the applicable legal standards and the specific facts of this case. *See, e.g., Luxottica Group S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 827–28 (N.D. Ill. 2019) (granting defendants' motion to dismiss based on improper email service under the Hague Convention, even though the court had previously authorized such service ex parte, explaining that the earlier order "does not withstand scrutiny under full adversary briefing").

At the time of Plaintiff's *ex parte* motion, the Court did not have the benefit of briefing on the relevant legal authorities, including binding international treaties. Instead, the application was supported solely by Plaintiff's unopposed assertions of urgency and practicality, along with a substantial list of 234 defendants for whom Plaintiff sought email service.

Practicality does not override legal requirements. Although many litigants may prefer to serve defendants electronically for reasons of efficiency, such preferences cannot displace established rules—particularly where international law is implicated.

"[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies."

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705, (1988); *see also Cisco Sys. v.*

*Lamination Serv.*, No. 2:21-cv-02139-TLP-tmp, 2021 U.S. Dist. LEXIS 96901, at *3–4 (W.D. Tenn.

May 21, 2021); *Sparrow Capital, LLC v. Katcharian*, No. 11-cv-34-WOB, 2013 U.S. Dist. LEXIS

200093, at *22 (E.D. Ky. Sep. 13, 2013).

As discussed above, both China and the United States are signatories to the Hague Service

Convention, which governs service of process in cross-border litigation. Under that framework, a

court in one signatory country may exercise jurisdiction over a person in another signatory country

only if service complies with the Convention's requirements. The Convention allows participating

countries to object to certain forms of service, and China has expressly objected to service by email.

(See Exhibit A.)

Just as a Chinese court may not unilaterally determine the sufficiency of service under

American law, American courts are likewise bound by the limitations of international treaties in cases

involving foreign defendants. Respect for these treaty obligations ensures reciprocal recognition and

enforcement of judicial proceedings across jurisdictions.

Having now been provided the legal framework, not just Plaintiff's preferences, Notionnovel

respectfully requests that the Court consider its motion under Federal Rule of Civil Procedure

12(b)(4) and grant dismissal accordingly.

**H. Plaintiff did not Perform a "Diligent Search" Prior to Seeking Alternative Service**

Notionnovel anticipates that Plaintiff will take the position that the Hague Convention does

not apply because Notionnovel's address was "not known" at the time Plaintiff attempted to

circumvent the Hague Convention.

"To determine whether an address is 'known,' courts have repeatedly looked to the efforts

plaintiffs have put forth in attempting to discover said addresses. Particularly, before a plaintiff 'can

14

circumvent the methods for service of process authorized by the Hague Convention, the plaintiff must put forth reasonable diligence in attempting to discover the defendant's address." *Robinson v. Turner*, No. 8:23-cv-626-SDM-SPF, 2024 U.S. Dist. LEXIS 27081, at *4 (M.D. Fla. Feb. 16, 2024) (cleaned up).

In the declaration of G. Edward Powell III, Mr. Powell attested that the *totality* of his attempts to discover defendant's addresses consisted of (a) viewing Notionnovel's website and social media pages (ECF No. 140-1, ¶¶ 4–5); and (b) looking up Notionnovel's domain name registration information. (ECF No. 140-1, ¶6).

That is all.

Just looking up Notionnovel's website and domain name registration info does not come close to the standard necessary for "reasonable diligence." *See e.g.*, *Progressive Southeastern Ins. Co. v. J & P Transp.*, No. 1:11-cv-137, 2011 U.S. Dist. LEXIS 73946, at *5–6 (N.D. Ind. July 8, 2011) (finding plaintiff used a private investigator to locate defendants, but because of plaintiff's failure to ask the private investigator to perform any follow-up work after the initial attempted service through the Canadian Central Authority failed, plaintiff's attempts were not reasonably diligent); *see also Opella v. Rullan,* No. 10-21134-CIV-JORDAN/MCALILEY, 2011 U.S. Dist. LEXIS 69634 (S.D. Fla. June 29, 2011) (holding that, because plaintiff did not personally check the voter registration records of Mexico, the drivers' license registration records or the utility company records in an effort to locate defendant, plaintiff's efforts to search for defendant in only certain municipalities of Mexico did not constitute reasonable diligence, and thus defendant's address was not unknown); *Jimena v. UBS AG Bank*, No. CV—F-07-367 OWW/SKO, 2010 U.S. Dist. LEXIS 57359 (E.D. Cal. June 10, 2010) (refusing to authorize substituted service because plaintiff provided no information regarding his efforts to ascertain defendant's address in Switzerland, had failed to conduct an appropriate investigation regarding defendant's address, and had not attempted to effect service

through the Hague Convention); *c.f. Chanel, Inc. v. Xu,* No. 2:09-cv-02610-cgc, 2010 U.S. Dist. LEXIS 6734, at *3 (W.D. Tenn. Jan. 27, 2010) (determining the Hague Convention did not apply after plaintiff hired a private investigator in China who determined that the physical addresses provided by defendants did not identify street names, numerical street addresses or building numbers and that the addresses interchanged postal codes and sections for various cities, and who also conducted further searches of public databases and directories in China, unable to locate defendants, their addresses were unknown); *RPost Holdings, Inc. v. Kagan*, No. 2:11-cv-238-JRG, 2012 U.S. Dist. LEXIS 7566, at *3–6 (E.D. Tex. Jan. 23, 2012) (granting substituted service on defendant only after plaintiff had attempted service through the Hague Convention on the address associated with defendant's online business website and had requested defendant's address from defendant's attorney and been refused); *Malone v. Highway Star Logistics, Inc.*, No. 08-cv-01534-RPM—KLM, 2009 U.S. Dist. LEXIS 64024, at *5–6 (D. Co. July 13, 2009) (finding that defendant's addresses were unknown for the purposes of the Hague Convention after plaintiff's attempted service through the Hague Convention and through private process servers at defendants' various foreign addresses on their vehicle registration certificates, their vehicle liability insurance cards, and their drivers' licenses, as well as at the addresses provided by defendants, the court was satisfied that defendants' addresses were unknown).

It is Plaintiff's burden to establish that it made a reasonable investigation to ascertain Notionnovel's physical address. *Pyure Brands, LLC v. Nascent Health Sci. LLC*, No. 1:18-cv-23357-UU, 2019 U.S. Dist. LEXIS 227498, at *5 (S.D. Fla. Mar. 5, 2019) ("The applicable burden on a motion to dismiss for insufficient service of process under Rule 12(b)(5) is identical to that on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). … The burden-shifting framework established by the Eleventh Circuit for evaluating motions to dismiss for personal jurisdiction requires the plaintiff to produce competent evidence in support of his jurisdictional

16

claims once the defendant has rebutted the jurisdictional allegations in the complaint."); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F. Supp. 3d 816, 824–25 (N.D. Ill. 2019).

Plaintiff's declaration provides no evidence that Plaintiff attempted to hire a private investigator to look into Notionnovel's whereabouts. There is no evidence that Plaintiff reached out to Notionnovel at any point to inquire as to its address. Mr. Powell's declaration does not even state the date on which he viewed Notionnovel's website and social media profiles. Thus, Plaintiff has failed to meet their burden of demonstrating reasonable diligence in attempting to discover Notionnovel's address, and therefore, the Hague Convention applies.

## II.     PLAINTIFF HAS FAILED TO STATE A CLAIM DUE TO PLAINTIFF'S LUMPING TOGETHER THE ACTIONS OF ALL 234 DEFENDANTS

F. R. Civ. P. 8(a)  requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must also provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *GS Holistic, LLC v. Wireless & Smoke LLC*, No. 1:23-cv-748, 2025 U.S. Dist. LEXIS 49752, at *9 (S.D. Ohio Mar. 18, 2025).

The Complaint lists *234 different defendants* under Schedule A. (ECF. No. 32.) The Complaint fails to provide any ability to discern or distinguish which factual claims apply to which of the 234 different defendants in this case. ECF No. 1. "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard." *Jackson v. Michigan*, No. 22-13150, 2023 U.S. Dist. LEXIS 233067, at *7 (E.D. Mich. Nov. 21, 2023). "A complaint that lumps all the defendants together and fails to distinguish their conduct, fails to give adequate notice to the defendants as to what they did

wrong." *Aaron v. Durrani*, No. 1:13-cv-202, 2013 U.S. Dist. LEXIS 130510, at *11 (S.D. Ohio Sep. 12, 2013) (*cleaned up*).

For this reason, the Complaint fails to state a cause of action against Notionnovel. Notionnovel is entitled to know which specific facts of which specific counts apply to it.

## III.    THE AMENDED COMPLAINT FAILS TO ALLEGE THE EXISTENCE OF AN ENTERPRISE

"A properly pled RICO claim must cogently allege activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000). "An 'association in fact' enterprise requires 'an ongoing organization, formal or informal,' with the various associates functioning as a 'continuing unit.'" *Shields v. UNUMProvident Corp.*, 415 F. App'x 686, 691 (6th Cir. 2011).

Here, Plaintiff has failed to allege the existence of an enterprise because they have failed to allege facts in support of any organizational structure at all, nor has Plaintiff "cogently allege" coordinated behavior among defendants.

### A.   The Amended Complaint Fails to Allege Facts Showing Any Organizational Structure

"The hallmark of an enterprise is structure. . . . There must be some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much. A RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making. The continuity of an informal enterprise and the differentiation among roles can provide the requisite structure to prove the element of enterprise." *United States v. Johnson*, 430 F.3d 383, 391 (6th Cir. 2005) (quoting *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996)). Or to put in another way, there must be "(1) an ongoing organization with some  sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing  unit with established duties; and

(3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged." *Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 793 (6th Cir. 2012).

For instance, in *Perkins v. Wells Fargo Bank, N.A.*, No. 12-4284, 2014 U.S. App. LEXIS 5006, at *12-*13 (6th Cir. Mar. 12, 2014), the Sixth Circuit noted that plaintiffs "failed to state a RICO claim" because they failed to "adequately allege the existence of an enterprise" as they "did not describe the hierarchical structure of an enterprise, much less name the specific persons in the enterprises and their roles, or demonstrate that the enterprise functioned as a continuing unit."

Likewise in *Emmet v. Franco*, No. 16-cv-11211, 2016 U.S. Dist. LEXIS 109726 (E.D. Mich. Aug. 18, 2016), plaintiff sued a group of defendants who owned of a number of different farm companies. Plaintiff alleged that these defendants solicited plaintiff for investment, representing that they owned legal marijuana warehouses. Plaintiff then claimed that he was the subject of a fraud and brought a RICO action against them. The District Court held that plaintiff failed "to plead any type of organizational structure that exists separate and apart from the pattern of wrongdoing." *Id* at 16. The complaint in *Emmet* was also devoid of any details as to how the defendants listed were organized.

The Amended Complaint does not plead *any facts* with respect to the organizational structure of the enterprise. There is not one factual allegation as to the "framework or superstructure" of the enterprise. There is not one factual allegation about the organization and decision-making process of the enterprise. There is not one factual allegation about when Notionnovel joined the enterprise. There is not one factual allegation as to what the "established duties" or roles were for each of the defendants within the enterprise.

The Amended Complaint, in failing to make any factual allegations about the organizational structure itself, fails to plead the existence of an enterprise.

**B. The Amended Complaint's Allegations of Coordination Rely on Unwarranted Factual**

**Inferences**

In addition, the Amended Complaint fails to plead the existence of an enterprise because its allegations of "coordinated behavior" relies on unwarranted factual inferences.

The Amended Complaint alleges a number of superficial similarities between the Notionnovel and other RICO Defendants as defined in the Amended Complaint, i.e.:

1. A "similar look and feel" in the websites (ECF No. 153, ¶47);

2. Common PayPal Client IDs, but different Merchant IDs (ECF No. 153, ¶48);

3. Shared physical service address on registration documents (ECF No. 153, ¶49); and

4. Algorithmic email naming (ECF No. 153, ¶50).

These allegations all follow the same general pattern. Plaintiff alleges the existence of a similarity and then concludes that the similarity means coordination.

But on a Rule 12(b)(6) motion to dismiss, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Christian v. Altaire Pharm., Inc.*, No. 20-6360, 2021 U.S. App. LEXIS 23751, at *3 (6th Cir. Aug. 10, 2021).

For example, with respect to the "similarity in websites," the Amended Complaint alleges that the websites "exhibit a highly similar look and feel" because they employ "substantially identical font choices, design layouts, and overall aesthetic." Plaintiff then leaps to the factual inference that this alleged "uniformity" indicated a "centralized design template or shared resources, reflecting a coordinated effort rather than independent actions." (ECF No. 153, ¶47).

None of these inferences are reasonable.

*Many* online business websites share "substantially identical font choices." Plaintiff alleges that the websites use the same fonts without identifying the fonts used, or which websites use which fonts. Plaintiff also does not allege that the specific font used is uncommon. Plaintiff also does not

allege facts supporting the conclusion that Notionnovel and other RICO Defendants employ "substantially identical" design layouts. Nor does Plaintiff say what about Notionnovel's websites' layouts are special or unique to the RICO Defendants as opposed to again, any other company that does business online. The same with respect to "overall aesthetic" where again, Plaintiff does not allege any factual support for this conclusory statement.

Furthermore, even if the Court were to accept that Notionnovel employed a highly similar look and feel in its websites with those of other RICO Defendants, it is unwarranted to conclude that Notionnovel coordinated their efforts to that end.

Plaintiff has alleged RICO against the Moving Defendants and Defendant Nanchang Yangfa Technology Co., Ltd. (ECF No. 153) The Complaint lists 234 different defendants under Schedule A. (ECF No. 32). Many of those defendants sold allegedly infringing goods on Amazon, Ebay, Temu, or other third-party platforms. But some of the defendants sold goods out of their own websites as Notionnovel did. This includes Defendants No.: 8 (happyteesco.com), 20 (heyisail.com), 21 (flownwing.com), 31 (yoyocats.com), 111 (nowkhaz.com), 148 (fruugo.com), 159 (inspiredhousehold.com), 160 (awishday.com), 162 (dodorado.com), and 163 (infinitias.com). Plaintiff alleges that similar website design evinces a common enterprise, but then turns around and excludes numerous websites with similar designs or layouts, without explanation why *some* defendants with similar websites are coordinated while other defendants with similar websites are not.

Likewise Plaintiff next allege that the RICO Defendants all share the same "PayPal client ID" but acknowledges that each store has their own individual and different "merchant IDs." This PayPal client ID does nothing more than suggest each of the websites uses a popular SaaS platform such as

Shopify. The Client ID represents the ID of the SaaS service provider registered with PayPal.[3] From there, Plaintiff then jumps to the unwarranted factual inference of there being a central administration through a single PayPal Business or Partner account. Once again, this is wrong. According to PayPal itself, "Each PayPal account has a unique merchant account ID. When you create a payment button, you can choose to display your merchant account ID instead of your primary email address. This way your email address won't be visible to spammers."[4]

With respect to service address, Notionnovel's registration address is not Flat/RM 705, 7/F, Fa Yuen Comm Building as alleged in the Amended Complaint. Though Flat/RM 705, 7/F, Fa Yuen Comm Building is a Service Address used for businesses registered in Hong Kong (in the same way many American companies are registered in Delaware) that operate primarily in other location (Mainland China) and need a registered agent that is able to accept service of process on behalf of the company in Hong Kong. In the United States for instance, many companies registered in Delaware have 1209 Orange Street, Wilmington, DE 19801 as their registration address, as that is the registered agent address for CT Corporation in Delaware. Likewise, there are a large number of different unrelated Chinese companies that do the same with the Flat/RM 705, 7/F, Fa Yuen Comm Building address.[5]

Furthermore, Plaintiff alleges that RICO Defendants used email addresses that appear to be "algorithmically generated." From there, Plaintiff then jumps to the conclusion that as a result, there was a "unified operational approach across the enterprise." Plaintiff does not explain how one

---

[3] https://developer.paypal.com/api/rest/
[4] https://www.paypal.com/us/cshelp/article/how-do-i-find-my-secure-merchant-id-on-my-paypal-account-help538
[5] https://fcc.report/FCC-ID/2AYHE-2208D/6345669.pdf;
https://www.importyeti.com/supplier/kut-global; https://weetcl.com/Contact_Us/;
https://panjiva.com/Lanka-China-General-Trading-Co-Ltd-Flat-Rm/200442552;
https://www.ltddir.com/companies/topsun-marine-hk-co-limited/;

follows the other. In fact, as explained in the accompanying Notionnovel's declaration, Notionnovel named its PayPal accounts email address using letter combinations whose pronunciations resemble the Chinese pronunciation of the Company name. *See* ECF No. 141-2, ¶19.

Lastly, Plaintiff alleges that the "total amount sent" of 0 in PayPal's account summary indicates the PayPal accounts function primarily as collection points. This inference is simply wrong. Notionnovel typically withdraw the PayPal balance to a third-party payment platform, and then use that platform to pay service providers, instead of using PayPal to transfer funds directly to service providers. As a result, the PayPal account summary shows a total sent amount of zero. This method of handling payments is common and efficient for cross-border transactions and does not indicate that the PayPal account is used as a collection point for any improper purpose. *See* ECF No. 141-2, ¶¶ 21-23.

Taken together, the Amended Complaint contains little in way of factual allegations but much in way of unwarranted factual inferences.

## IV.   THE AMENDED COMPLAINT FAILS TO PLEAD THE EXISTENCE OF INJURY TO BUSINESS AND PROPERTY

"A civil RICO plaintiff must also show that (1) the defendant's RICO violation was a but for cause of the plaintiff's injury, and (2) that the RICO predicate act proximately caused the plaintiff's alleged injur[ies]." *Stallard v. Goldman Sachs Grp., Inc.*, Civil Action No. 20-2703 (RBW), 2024 U.S. Dist. LEXIS 215791, at *19 (D.D.C. Nov. 27, 2024) (cleaned up). "While the misuse of intellectual property can suffice to confer standing for a RICO claim, the plaintiff must provide a concrete example of the harm that was caused." *Id.* at *21-*22(cleaned up).

In *Stallard*, plaintiff attempted to raise a RICO claim in relationship to defendant's alleged infringement of plaintiff's copyrights and trademark. The District Court, however, noted that "mere injury to an intangible property interest" is not enough to sustain an "injury" for purposes of civil

RICO and dismissed the claim. *Id.* at *23 (cleaned up).

Similarly, in *McGillvary v. Scutari*, No. 23-cv-22605-JMY, 2024 U.S. Dist. LEXIS 231615, at *35-*36 (D.N.J. Dec. 23, 2024), plaintiff alleged that defendants willfully "copied, displayed, broadcast, and made derivative works" from Plaintiff's work without authorization for private financial gain in violation of Plaintiff's copyright in four works. However, the District Court held that "Plaintiff alleges no actual loss, and thus has no RICO standing, in connection with any alleged copyright infringement," holding that "[a]t best, Plaintiff's allegations are akin to a claim for lost profits, which are cognizable only if they are not remote or speculative and can be described with concreteness." *Id.* (cleaned up). The District Court also explicitly rejected legal fees, holding "legal fees in the RICO action cannot form the basis for RICO liability." *Id.* (cleaned up). This makes sense as RICO has a fee shifting provision, which would make "injury" a moot requirement if the legal fees associated with the action can be used to constitute concrete injury.

Just as in those cases, the Amended Complaint also allege only non-concrete injuries such as "lost sales, diminution of brand value, damage to goodwill and reputation, and substantial expenses incurred in attempting to combat the defendant's illegal activities."

Not only does the Amended Complaint not allege concrete harm, it also fails the but for and proximate causation test. Here, Plaintiff has brought copyright and trademark infringement claims against *234* different defendants. Plaintiff does not allege that *any* of the (small handful of) buyers of the allegedly infringing goods would have purchased them from Plaintiff had they not purchased them from Notionnovel. It is just as likely that they would have purchased it from someone else, including either one of the other 234 different defendants, or the many other merchants who also sell legal generic versions of Plaintiff's game as the Notionnovel did in selling goods advertised as the "Crossword Solitaire Game," making no mention of the "Q-Less" mark.

For these reasons, the Amended Complaint fails to allege a concrete injury to Plaintiff's

business, experienced but for Notionnovel's allegedly infringing conduct.

## CONCLUSION

For the foregoing reasons, Plaintiff is unable to demonstrate sufficient service of process to maintain this lawsuit against Notionnovel, and have failed to state a RICO claim against Notionnovel. Notionnovel therefore respectfully requests that the Court dismiss the case and grant other relief that is just and proper.

Dated: August 26, 2025

Respectfully submitted,

/s/ Ryan D. Levy
Ryan D. Levy (TN BPR #024568)
Patterson Intellectual Property Law, P.C.
1600 Division Street, Suite 500
Nashville, TN 37203
rdl@iplawgroup.com

-and-

/s/ Jacob Chen
Jacob Chen (*Pro Hac Vice*)
jchen@dgwllp.com
**DGW KRAMER LLP**
45 Rockefeller Plaza, 20th Floor,
New York, NY 10111

*Counsel for Defendant No. 19 Notionnovel.com*

**CERTIFICATE OF SERVICE**

On August 26, 2025, I filed the foregoing document with the clerk of court for the U.S. District Court, Middle District of Tennessee, using the CM/ECF System which will send notification of said filing to all counsel of record.

*/s/ Ryan Levy*
Ryan Levy