IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **GRAND ISLE GAMES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 3:25-cv-00390** |
| ) | **Judge Aleta A. Trauger** |
| **THE ENTITIES, PARTNERSHIPS,** ) | |
| **AND UNINCORPORATED** ) | |
| **ASSOCIATIONS LISTED ON** ) | |
| **SCHEDULE A,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM**

This case is a sprawling intellectual property dispute between the plaintiff and hundreds of defendants who are subject to an asset freeze the court imposed in a May 2025 Preliminary Injunction. Eight defendants (the "Moving Defendants"), who are alleged to have been part of a RICO conspiracy and who have sought in a still-pending motion to dissolve the Preliminary Injunction, have filed a Motion for Order to Show Cause as to Why the Injunction Should not be Reduced in the Interim ("Show Cause Motion") (Doc. No. 182). Along with their Show Cause Motion, the Moving Defendants have filed declarations of their CEOs, who are the subjects of the plaintiff's Expedited Motion for Leave to Take Early Depositions and for Leave to Supplement Responses ("Expedited Motion") (Doc. No. 184). For the reasons set forth therein, the court will grant the Moving Defendants' Show Cause Motion and deny the plaintiff's Expedited Motion.

I.  **FACTS & PROCEDURAL HISTORY**

Plaintiff Grand Isle Games, LLC owns intellectual property related to its word game Q-Less and in April 2025 sued hundreds of defendants for selling knockoffs, alleging trademark,

trade dress, and copyright infringement under federal statutes and unfair competition under Tennessee law. (*See generally* First Amended Complaint ("FAC"), Doc. No. 153.)[1] In addition, the FAC added two counts against nine defendants (the "RICO Defendants") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*—one for a RICO violation under 18 U.S.C. § 1962(c) (FAC ¶¶ 84–95) and one for conspiracy under 18 U.S.C. § 1962(d) (*id.* ¶¶ 96–102)—and facts in support of the new claims (*id.* ¶¶ 45–62). The RICO Defendants are Defendants Nos. 19 (notionnovel.com), 22 (concertchop.com), 27 (bamaxisboon.com), 24 (interestcen.com), 28 (classupery.com), 29 (beyonddraw.com), 25 (repertoireof.com), 26 (communicaten.com), and 32 (thrivenget.com).

Soon after filing the original Complaint, the plaintiff filed an *ex parte* Motion for Temporary Restraining Order ("TRO Motion") (Doc. No. 11) seeking, in pertinent part, an order freezing the defendants' assets "to preserve Plaintiff's ability to obtain equitable relief[.]" (Doc. No. 11 at 1.) In support, the plaintiff stated that such relief is "frequently granted" and necessary "to preserve the possibility of equitable remedies like disgorgement of illicit profits." (Doc. No. 12 at 14 (citation omitted).) The next day, the court granted the TRO Motion, including its request for an asset freeze. (Doc. No. 17 at 4 ("Any and all financial accounts associated with Defendants . . . shall be immediately FROZEN pending further Order of this Court.").) The court noted that the asset freeze was "warranted to preserve the status quo and ensure the availability of adequate relief (including an accounting of profits) should Plaintiff ultimately prevail." (*Id.* at 2.) The court twice extended the TRO on the plaintiff's motions. (Doc. Nos. 25, 30.)

---

[1] The plaintiff originally filed this action pseudonymously and with minimal detail (Doc. No. 1) and then filed a Complaint under seal (Doc. No. 9), which the court later unsealed. (Doc. No. 40.) The court has since granted the plaintiff's Motion to Amend Complaint (Doc. No. 127). (Doc. No. 152.)

Just before the TRO's expiration, the plaintiff moved for a Preliminary Injunction to extend the TRO's relief indefinitely. (Doc. No. 34 at 1.) The plaintiff stated that the "TRO's asset freeze provisions have proven vital," noting that the extent of frozen assets—by then millions of dollars—"confirms the scale of Defendants' infringing enterprise and the necessity of the freeze to preserve Defendants' illicit proceeds for potential recovery." (Doc. No. 35 at 6.)[2] The plaintiff served the defendants electronically, as the court had approved under Fed. R. Civ. P. 4(f)(3). (Doc. No. 11 at 3, 5 (approving alternate service); *see generally* Powell Decl., Doc. No. 36; Doc. No. 36-1).) At the end of May 2025, after a hearing, the court entered a Preliminary Injunction Order, continuing the asset freeze. (Doc. No. 52 at 3–4.)

In August 2025, all of the RICO Defendants except for Defendant No. 19 (notionnovel.com) (the "Moving Defendants") moved to dissolve the Preliminary Injunction. (Doc. No. 149.) In support, they made several arguments: 1) the court lacks personal jurisdiction over them because they made no infringing sales in Tennessee and because Chinese entities cannot lawfully be served by email (Doc. No. 149 at 3 (citations omitted)); 2) the plaintiff has not established a likelihood of prevailing (*id.* at 4–8); 3) the plaintiff does not seek equitable relief and the court cannot freeze assets to satisfy legal judgments (*id.* at 8–9); 4) the plaintiff has not shown it likely that the defendants will dissipate their assets (*id.* at 9–10); and, 5) even if the plaintiff will be entitled to illicit profits, the asset freeze far exceeds such profits (*id.* at 10–12).

In relevant part, the plaintiff responded that the asset freeze is necessary to provide equitable relief both for "equitable disgorgement of racketeering proceeds under RICO and an

---

[2] In fact, the size of the asset freeze is not probative of the alleged enterprise's scope. Because the court froze the defendants' accounts wholesale, the size of the asset freeze is probative only of the size of the Moving Defendants' businesses, which are not alleged to exclusively sell infringing products.

equitable profits award under the Lanham Act." (Doc. No. 162 at 3.) The parties debate at some length whether the FAC seeks equitable relief. (*Contrast* Doc. No. 149 at 8–9, *and* Doc. No. 167 at 4–6, *with* Doc. No. 162 at 2–4 & n.4.) While both the Lanham Act and the Copyright Act allow plaintiffs to recover a defendant's illicit profits, 15 U.S.C. § 1117(a), 17 U.S.C. § 504(b), the parties disagree whether a plaintiff seeks *equitable* relief under the federal statutes, as opposed to damages.[3] The form of relief the plaintiff seeks is relevant because courts generally cannot impose asset freezes to ensure the availability of *legal* remedies. *Grupo Mexicano de Desarrollo v. Alliance Bond Fund,* Inc., 527 U.S. 308, 333 (1999). The court puts this issue to the side, however, because the FAC explicitly seeks *equitable* relief under RICO. (Doc. No. 153 at 23 (seeking "an equitable disgorgement of racketeering proceeds" under RICO).)

Before the court could rule on the Moving Defendants' Motion to Dissolve the Injunction, the same Moving Defendants filed their Show Cause Motion, along with the Declarations of an expert quantitative social scientist (Doc. No. 182-1) and all of their CEOs (Doc. Nos. 182-2 through 182-6),[4] to which the plaintiff has filed a Response (Doc. No. 186), along with the Declaration of its own expert (Doc. No. 186-1) and exhibits (Doc. Nos. 186-2 through 186-9), and in further support of which the Moving Defendants have filed a Reply (Doc. No. 195), along with further Declarations by their CEOs (Doc. Nos. 195-1 through 195-5).

---

[3] The FAC seeks "statutory, compensatory, and/or treble and punitive damages arising out of Defendants' infringement and unfair competition, including costs, attorneys' fees, and interest where authorized by law[.]" (Doc. No. 153 at 23 (citation modified).) *Cf. Zorro Prods., Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Assocs. Identified on Schedule A Hereto*, No. 23-cv-5761, 2023 WL 8807254, at *4 (N.D. Ill. Dec. 20, 2023) (noting a distinction between "remedies at law – such as statutory damages" and "equitable monetary relief," which "affects the calculus when it comes to an asset freeze").

[4] Some of the Moving Defendants apparently have the same CEO. (*See, e.g.*, Liang Decl., Doc. No. 182-4 ¶ 1 ("I am the CEO of Larryhot Trading Co., Ltd . . . which operates the internet stores concertchop.com and bamaxisboon.com . . . identified as Defendant No. 22 and No. 27 in this lawsuit.").)

A week after the Moving Defendants filed their Show Cause Motion, in response, the plaintiff filed its Expedited Motion (Doc. No. 184), along with exhibits (Doc. Nos. 184-1 through 184-7). The plaintiff asks to take early depositions of the CEOs whose declarations the Moving Defendants submitted with their Show Cause Motion, in addition to the CEO of Defendant No. 19, notionnovel.com—that is, the CEOs of the RICO Defendants. The RICO Defendants have filed a Response (Doc. No. 194) and the plaintiff has filed a Reply (Doc. No. 198).

## II. DISCUSSION

### A. Show Cause Motion

The Moving Defendants briefly reassert their original arguments, including that the court lacks jurisdiction over them, but in the main argue that the total asset freeze has impeded and will continue to impede the vast majority of their businesses, which are not implicated by this case. According to the Moving Defendants, the allegedly infringing products make up only a tiny part of their businesses: "the $4.226 million restrained was grossly disproportionate to the $880.54 in total sales of allegedly infringing goods." (Doc. No. 182 at 2 (emphasis removed).) The Moving Defendants delineate each of their allegedly infringing U.S. sales, which, for Defendants No. 26 and 32, is none. (Doc. No. 182 at 7–8.) As the Moving Defendants put it, "[i]n addition to enormous financial losses," they have "incurred significant and irreparable harm in the form of serious reputational harm with customers, employees, and business partners because the prolonged asset freeze has disrupted normal business operations, delayed payment to suppliers, and prevented the fulfillment of customer orders." (Doc. No. 182 at 2.)

In response, the plaintiff does not contest the Moving Defendants' statements regarding their respective sales, but instead argues that the extent of the Moving Defendants' sales is irrelevant; rather, because their liability under RICO for equitable disgorgement of profits is joint and several with non-movant Defendant No. 19, notionnovel.com, which has admitted to roughly

5

one-half million dollars in U.S. sales of allegedly infringing products, a continued freeze of their entire assets is necessary to preserve the court's ability to ensure equitable relief. (Doc. No. 186 at 2, 4–5.) Moreover, the plaintiff argues, "the scope of the racketeering activity is yet to be determined." (*Id.* at 4.)

The Moving Defendants respond that, even if Notionnovel's sales are relevant,[5] their millions of dollars in frozen assets are roughly ten times Defendant 19's admitted *revenue*, of which any illicit profit would be a subset. (Doc. No. 195 at 3.) In essence, the Moving Defendants argue, even if the court ought to freeze some of their assets to allow for joint and several disgorgement, the extent of the asset freeze is wildly disproportional and meanwhile causing substantial damage to their legitimate businesses.

The court agrees with the Moving Defendants. Even assuming that the plaintiff has requested equitable relief under federal statutes, that joint and several equitable relief is available under RICO, and that the plaintiff is likely to prevail on the merits, the plaintiff has not shown that continuing a total asset freeze on the Moving Defendants is warranted. While the court recognizes that the plaintiff does not have access to full sales records and that full discovery has yet to occur, the asset freeze is disproportionate to the plausible extent of Moving Defendants' allegedly

---

[5] The Moving Defendants separately argue that RICO does not provide the remedy of equitable disgorgement. (Doc. No. 195 at 6.) The court is pessimistic that the plaintiff will sustain an equitable disgorgement remedy under RICO. The plaintiff cites no in-circuit case where such a remedy has been employed, and our sister court in this circuit has explicitly stated that no such remedy is available. *Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2025 WL 892586, at *14 (S.D. Ohio Mar. 24, 2025) ("[D]isgorgement isn't an available remedy under [RICO.]" (referring to a party's citation of *U.S. v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1200-02 (D.C. Cir. 2005)); *accord United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1108 (D.C. Cir. 2009) ("We . . . held that disgorgement is not an available remedy in civil RICO cases." (citing *Philip Morris*, 396 F.3d).)

infringing sales, let alone profits, and the plaintiff has not argued otherwise. *Cf. Skechers U.S.A., Inc. II v. P'ships & Unincorporated Assocs.*, No. 24 CV 596, 2025 WL 1455801, at *3 (N.D. Ill. Mar. 10, 2025) ("[A]n asset restraint as to the defendant's profits could be appropriate—provided the plaintiff established that the assets to be restrained were the defendant's profits from sales of the accused products."). To the contrary, the Moving Defendants represent that, collectively, they have made $880.54 in U.S. sales of allegedly infringing goods and propose that the court adjust the asset freeze to ten times that amount. (Doc. No. 182 at 8.)

The plaintiff has argued that the asset freeze should remain in place because of the "strong[] . . . inference that Defendants are likely to dissipate assets." (Doc. No. 162 at 2.) And the plaintiff now states that the "asset restraint is necessary to preserve the Court's ability to grant meaningful equitable relief—namely, disgorgement of the proceeds from Movants' participation in a RICO enterprise." (Doc. No. 186 at 2.) But the argument that the total asset freeze on the Moving Defendants is necessary to preserve the plaintiff's ability to recover *joint and several* equitable relief is unavailing, because Defendant 19, Notionnovel.com, has not moved to dissolve or modify the injunction, so its assets would remain frozen were the court to grant the Moving Defendants' Motion. (*See* Doc. Nos. 149, 182.) According to the plaintiff itself, Notionnovel's PayPal balance as of November 7, 2025 was $97,836.89. (Ex. G, Reconstructed Balance for PayPal (Notionnovel), Doc. No. 186-8 at 2).) Moreover, the plaintiff notes that Notionnovel's "PayPal balance has remained nearly identical since August." (Doc. No. 186 at 4 (first citing Hackworth Decl., Doc. No. 186-1 ¶ 21(f); and then citing Doc. No. 186-8 at 2).) Thus, the plaintiff's argument regarding dissipation of assets is not convincing as to Notionnovel. The plaintiff has not explained why Notionnovel's substantial, consistent, frozen assets would not be available to satisfy a potential

7

equitable judgment for its part in the alleged RICO enterprise with its alleged co-conspirators, the Moving Defendants.

In a similar case in the Northern District of Illinois,[6] after reflecting on the "manner in which the preliminary injunction came about"—following an *ex parte* TRO and its extension—the court concluded:

> Having had the benefit of the adversarial process in this case, and having reflected on the propriety of asset restraints in "Schedule A" cases generally, the Court finds that the restraint of "any money or other of Defendants' assets" is overly broad.
>
> . . .
>
> [A]n asset freeze may be appropriate where the assets in question are the defendant's profits and the law permits the plaintiff to obtain the defendant's profits as a remedy.

*Skechers*, 2025 WL 1455801, at *3. This court is similarly reflective. And the plaintiff has neither shown that the millions in frozen assets are the defendants' profits from their alleged infringement and RICO conspiracy, nor that non-movant Notionnovel's frozen assets would be unavailable to satisfy a joint and several equitable judgment. For the foregoing reasons, the court will grant the Moving Defendant's Show Cause Motion and modify the injunction, as to them only, to be ten times their admitted U.S. sales of allegedly infringing products.

### B. Expedited Motion

Part of the Moving Defendants' argument for modifying the injunction was the amount of their frozen assets, as represented by company officials. (Doc. No. 182 at 2, 3–5 (citations omitted).) In response, the plaintiff states that the "declarations contain[] materially misleading, demonstrably false, and bad-faith statements about the Movants' frozen PayPal accounts." (Doc.

---

[6] The Northern District of Illinois is the "epicenter of Schedule A litigation." *Eicher Motors Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule "A"*, 794 F. Supp. 3d 543, 547 (N.D. Ill. 2025) (citing Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 Colum. L. Rev. F. 183, 194–96 (2023)).

No. 186 at 1.) And, according to the plaintiff's expert, recent changes in balances the Moving Defendants represent were "mathematically impossible." (*Id.* at 2.) Instead, the plaintiff states that the Moving Defendants' collective frozen assets are not their self-reported 7 million dollars, but rather over 10 million dollars. (*Id.* at 3; *see also* Doc. No. 184 at 4 ("[T]he amounts are still massively understated[.]").)

Because of this discrepancy, the plaintiff has moved for leave to take early depositions of the company officials whose declarations it contends are false, as well as the deposition of non-movant Notionnovel's representative. (Doc. No. 184 at 1.) As the plaintiff explains, "[t]hese depositions are needed because these declarants . . . have submitted materially and demonstrably false testimony to the Court in a second effort to vacate the asset freeze." (*Id.* at 1.) And "[t]hese falsehoods go to the heart of the Show Cause Motion and cannot be adequately addressed without the declarants' cross-examination." (*Id.* at 2; *see also id.* at 6.)[7] The court disagrees. The precise amount of the Moving Defendants' frozen assets is not material to their Show Cause Motion, as the court has explained. If, as the plaintiff claims, the Moving Defendants' declarants have made "demonstrably perjurious" statements, the court will address that at the appropriate time. (Doc. No. 198 at 2.)

Separately, the plaintiff seeks leave to supplement its prior briefing, "*including* its opposition to Defendants' motions to dismiss the First Amended Complaint." (Doc. No. 184 at 2 (emphasis added).) As the plaintiff explains, "[i]t is a near certainty that the deposition testimony

---

[7] The plaintiff also contends that the Moving Defendants have filed a "secret" third-party subpoena in violation of L.R. 45.01(d). (Doc. No. 184 at 1; *see also id.* at 6–7 (citations omitted).) In response, the Moving Defendants acknowledge that "an associate inadvertently failed to circulate the Paypal subpoena to all parties at the time it was issued. As soon as the oversight was discovered, Defendants remedied it by providing Plaintiff with notice and producing the subpoenaed materials." (Doc. No. 194 at 5 n.1.)

9

will unearth new facts relevant to Defendants' arguments regarding personal jurisdiction and the sufficiency of Plaintiff's RICO allegations." (*Id.* at 9.) And, the plaintiff argues, the court ought not rely on false Declarations the Moving Defendants have submitted in support of their motions to dismiss. (Doc. No. 198 at 5.) The Moving Defendants oppose this request. (Doc. No. 194 at 2–4.)

The plaintiff seeks jurisdictional discovery "regarding the scope of [Moving] Defendants' sales activity and the relationship of these defendants to Notionnovel[.]" (Doc. No. 174 at 12.) Before the court rules on the pending Motions to Dismiss, it will order jurisdictional discovery if and when it finds such discovery necessary. Until then, early discovery and supplemental briefing are not necessary. Accordingly, the plaintiff's request to supplement its prior briefing, at this point, will be denied.

### III. CONCLUSION

For the foregoing reasons, the Moving Defendants' Show Cause Motion (Doc. No. 184) will be granted and the plaintiff's Expedited Motion (Doc. No. 186) will be denied. The injunction will be modified, as to the Moving Defendants, as delineated in the Order being simultaneously entered.

_____
ALETA A. TRAUGER
United States District Judge