# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE  DIVISION

| | | |
|---|---|---|
| GRAND ISLE GAMES, LLC, | ) | Case No.: 3:25-cv-00390 |
| | ) | |
|   Plaintiff, | ) | |
| | ) | Judge:  Aleta Trauger |
| v. | ) | |
| | ) | Magistrate Judge: |
| THE ENTITIES, PARTNERSHIPS, AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| LISTED ON SCHEDULE A, | ) | |
|   Defendants. | ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS</u>

**TABLE OF CONTENTS**

I.    Introduction ........................................................................................................... 5

II.    Factual Background ............................................................................................... 5

    A.   Plaintiff's Intellectual Property Rights ......................................................... 6

    B.   Defendants' Infringing Conduct .................................................................... 6

    C.   Harm to Plaintiff and Consumers ................................................................. 6

    D.   Defendants' Evasive Nature and Operations ................................................ 7

III.   Procedural history ................................................................................................. 7

IV.   Legal Standard For Default Judgment ................................................................. 7

V.    Argument ............................................................................................................... 8

    A.   Plaintiff is Entitled to Judgment Against the Defaulting Defendants .............. 8

    B.   Default Judgment is Proper ........................................................................... 9

        1.   Possibility of Prejudice to Plaintiff ..................................................... 10

        2.   Allegations and Substantive Merits of Claims .................................... 10

        3.   Sum of Money at Stake ....................................................................... 15

        4.   Dispute of Material Facts .................................................................... 19

        5.   Excusable Neglect ............................................................................... 19

        6.   Public Policy ....................................................................................... 20

    C.   Plaintiff is Entitled to a Permanent Injunction ............................................. 20

VI.   Requested Relief .................................................................................................. 22

VII.  Conclusion .......................................................................................................... 24

Page(s)

Other Authorities

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
　280 F.3d 619 (6th Cir. 2002) ...................................................................................... 13

*AMF Inc. v. Sleekcraft Boats*,
　599 F.2d 341 (9th Cir. 1979) ...................................................................................... 12

*AWGI, LLC v. Atlas Trucking Co., LLC*,
　998 F.3d 258 (6th Cir. 2021) ...................................................................................... 12

*Buzz Seating, Inc. v. DCI, Inc.*,
　No. 1:24-CV-00555-JPH, 2025 WL 1191026 (S.D. Ohio Apr. 24, 2025) ........................ 19, 20

*Capitol Recs., Inc. v. Zahn*,
　No. 3:06-0212, 2007 WL 542816 (M.D. Tenn. Feb. 16, 2007) ......................................... 21, 22

*Chanel, Inc. v. Huang Cong*,
　No. 10-2086, 2011 WL 6180029 (W.D. Tenn. Dec. 8, 2011) ...................................... 15

*Circuit City Stores, Inc. v. CarMax, Inc.*,
　165 F.3d 1047 (6th Cir.1999) ...................................................................................... 21

*Coach, Inc. v. Goodfellow*,
　717 F.3d 498 (6th Cir. 2013) ...................................................................................... 11

*Djarum v. Dhanraj Imports, Inc.*,
　876 F. Supp. 2d 664 (W.D.N.C. 2012) ........................................................................ 18

*eBay Inc. v. MercExchange, L.L.C.*,
　547 U.S. 388 (2006) ................................................................................................... 8, 20

*Eitel v. McCool*,
　782 F.2d 1470 (9th Cir. 1986) ...................................................................................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
　499 U.S. 340 (1991) ................................................................................................... 13

*Ford Motor Co. v. Lloyd Design Corp.*,
　22 F. App'x 464 (6th Cir. 2001) .................................................................................. 12

*HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*,
　58 F. Supp. 3d 380 (S.D.N.Y. 2014) .......................................................................... 17

*Hensley Mfg. v. ProPride, Inc.*,
　579 F.3d 603 (6th Cir. 2009) ...................................................................................... 11

*I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*,
　No. 3:19-CV-00981, 2019 WL 6050283 (M.D. Tenn. Nov. 15, 2019) ...................................... 14

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
　456 U.S. 844 (1982) ................................................................................................... 14

*Kohus v. Mariol*,
　328 F.3d 848 (6th Cir. 2003) ...................................................................................... 13

*Leapers, Inc. v. SMTS, LLC*,
　879 F.3d 731 (6th Cir. 2018) ...................................................................................... 14

*Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*,
　No. 1:14-CV-22859-JAL, 2014 WL 4948632 (S.D. Fla. Oct. 2, 2014) ...................................... 16

3

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
40 F.4th 454 (6th Cir. 2022) ...................................................................................... 18

*Microsoft Corp. v. McGee*,
490 F. Supp. 2d 874 (S.D. Ohio 2007) ................................................................. passim

*Microsoft Corp. v. Sellers*,
411 F. Supp. 2d 913 (E.D. Tenn. 2006) ..................................................................... 17

*Mucerino v. Newman*,
No. 3:14-CV-00028, 2017 WL 387202 (M.D. Tenn. Jan. 26, 2017) ...................................... 8, 9

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) .................................................................................. 12

*Shepard Claims Serv., Inc. v. William Darrah & Assocs.*,
796 F.2d 190 (6th Cir. 1986) .................................................................................... 7

*United Press Int'l, Inc. v. Glob. One News, Inc.*,
No. 3:18-CV-00910, 2020 WL 2572483 (M.D. Tenn. May 21, 2020) ...................................... 8

*Versah, LLC v. UL Amin Indus.*,
No. 220CV12657TGBRSW, 2021 WL 3885865 (E.D. Mich. Aug. 31, 2021) .................. passim

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) .............................................................................................. 14

*Wynn Oil Co. v. Am. Way Serv. Corp.*,
943 F.2d 595 (6th Cir. 1991) .................................................................................... 18

*Zinganything, LLC v. Imp. Store*,
158 F. Supp. 3d 668 (N.D. Ohio 2016) .................................................................. 8, 9, 10

Regulations

15 U.S.C. § 1115 ...................................................................................................... 11
15 U.S.C. § 1116 ...................................................................................................... 20
15 U.S.C. § 116(a) ................................................................................................... 21
15 U.S.C. § 1116(d), (3) ........................................................................................... 16
15 U.S.C. § 1117(a) .............................................................................................. 18, 24
15 U.S.C. § 1117(c) ........................................................................................... 15, 16, 23
15 U.S.C. § 1125(a) .................................................................................................. 21
15 U.S.C. § 1127 ...................................................................................................... 11
17 U.S.C. § 502 ....................................................................................................... 21
17 U.S.C. §504 ..................................................................................................... 17, 24
28 U.S.C. § 1367 ....................................................................................................... 9
28 U.S.C. § 1391 ....................................................................................................... 9
28 U.S.C. §§ 1331, 1332 and 1338 .................................................................................. 9

Rules

Federal Rule of Civil Procedure 55(a) ...................................................................... 8, 10

Plaintiff Grand Isle Games, LLC ("Plaintiff"), submits this Memorandum of Law in support of its Motion for Default Judgment against certain Defendants identified in Exhibit A (collectively, the "Defaulting Defendants").

## I. INTRODUCTION

Plaintiff respectfully requests the Court enter a default judgment against the Defaulting Defendants. An Entry of Default was entered by the Clerk on February 17, 2026, against the Defaulting Defendants who have not appeared or responded to this action. (D.I. 210). A default judgment is now necessary to protect Plaintiff's valuable intellectual property rights from ongoing infringement and to facilitate Plaintiff's recovery of meaningful equitable and monetary remedies, including statutory damages, actual damages, and permanent injunctive relief. The same compelling reasons that justified the Preliminary Injunction continue to support the issuance of a permanent injunction against the Defaulting Defendants.

The claims against all defendants who previously appeared in this action have since been resolved, and no defendants presently maintain an active appearance. Accordingly, entry of a default judgment against the remaining Defaulting Defendants would fully resolve all pending claims and terminate this matter in its entirety.

## II. FACTUAL BACKGROUND

The detailed factual background supporting Plaintiff's claims was previously set forth in Plaintiff's Complaint (D.E. 9), Plaintiff's Amended Complaint (D.E. 153), the Memorandum of Law in Support of its Ex Parte Motion for Temporary Restraining Order (D.E. 12), and the supporting Declarations of Mahsa Marjorie P. Way-Kiani (D.E. 15) and G. Edward Powell III (D.E. 14) (the "Powell TRO Decl."). These facts were further set forth in the Memorandum of Law in Support of its Preliminary Injunction Motion (D.E. 35) and the supporting Declarations of G.

Edward Powell III (D.E. 36) (the "Powell PI Decl.") and Michael Lee (D.E. 37) (the "Lee Decl.").

The key facts are incorporated herein by reference and summarized below.

### A. Plaintiff's Intellectual Property Rights

Plaintiff designs, markets, and sells the popular "Q-Less®, The Crossword Solitaire Game" (the "Product"). Plaintiff owns U.S. Trademark Registration No. 6,038,633 for the QLess® mark for dice games (the "Mark"). (Compl. Ex. A; Powell TRO Decl. ¶ 9). Plaintiff uses distinctive trade dress for its Product's packaging, including a cylindrical tin (originally silver with a sticker, now all-beige) featuring specific slogans around the rim (the "Trade Dress"). (Amended Compl. ¶¶ 19, 70). Plaintiff also owns multiple U.S. Copyright registrations for promotional materials, images, videos, rules descriptions used in connection with the Product (the "Copyrighted Works"). (Amended Compl. ¶ 18; Powell TRO Decl. ¶ 4, Exs. 3-12).

### B. Defendants' Infringing Conduct

The Defaulting Defendants are part of a network of individuals and entities operating online storefronts through e-commerce platforms (e.g., Amazon, Walmart, Temu, eBay) and independent websites, advertising and selling counterfeit and infringing versions of Plaintiff's Product. (Amended Compl. ¶¶ 29-34; Powell TRO Decl. ¶¶ 2-6, Exs. 1-2). Their listings and products feature unauthorized uses of the Q-Less® Mark, confusingly similar imitations of the Trade Dress, and direct copies or derivatives of Plaintiff's Copyrighted Works. (Amended Compl. ¶¶ 29-34; Powell TRO Decl. ¶¶ 2-8, Exs. 1-2).

### C. Harm to Plaintiff and Consumers

Defendants' activities cause significant and irreparable harm to Plaintiff. Plaintiff suffers through lost sales, erosion of goodwill, dilution of its brand, and consumer confusion. (Amended Compl. ¶¶ 38-42; Way-Kiani Decl. Ex. C). This Court previously found these harms to be substantial. (D.E. 17, Finding I.3).

6

### D. Defendants' Evasive Nature and Operations

Defendants predominantly operate anonymously or under fictitious names from foreign jurisdictions, primarily China, to conduct their infringing activities and to shield their assets from recovery. (Amended Compl. ¶¶ 2, 43; Powell TRO Decl. ¶ 2). Their assets consist largely of funds from the infringing sales held in e-commerce platform and payment processor accounts. (Amended Compl. ¶¶ 2, 43; Powell TRO Decl. ¶ 2).

### III. PROCEDURAL HISTORY

On December 23, 2025, Plaintiff filed a Second Renewed Request for Entry of Default. (D.E. 204). On February 17, 2026, the Clerk issued an entry of default against the Defaulting Defendants based on Plaintiff's Amended Complaint (D.E. 153) filed on August 12, 2025. (D.E 210).

Plaintiff satisfied the requirements of Federal Rule of Civil Procedure 55(a). Upon review of the record, the Clerk found that the Defaulting Defendants were in default as they failed to plead or otherwise defend in this action. (D.E. 210). While Local Rule of Court 55.01(a), in conjunction with Federal Rule of Civil Procedure 55(a), usually governs motions for entry of default, an order suspending Local Rule 55.01(a) for purposes of this case was entered by this Court, consistent with Local Rule 1.01(a). (D.E. 210).

### IV. LEGAL STANDARD FOR DEFAULT JUDGMENT

Default and default judgment are governed by Federal Rule of Civil Procedure 55. An entry of default from the Clerk must first be secured before a plaintiff can move for entry of default judgment. Fed. R. Civ. P. 55 (a); *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193 (6th Cir. 1986) (clerk's entry of default is "the first procedural step on the road to obtaining a default judgment"). "Once default is entered, the defaulting party is deemed to have admitted all

of the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments." *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016).

A plaintiff "must apply to the court for a default judgment" if its "claim is not for a sum certain." *United Press Int'l, Inc. v. Glob. One News, Inc.*, No. 3:18-CV-00910, 2020 WL 2572483 at *1 (M.D. Tenn. May 21, 2020) (citing Fed. R. Civ. P. 55 (b)(1)-(2)).

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In reviewing the facts, the court is required to determine whether the stated facts are "sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability." *United Press Int'l, Inc. v. Glob. One News, Inc.*, 2020 WL 2572483 at *2.

Courts consider the following factors when determining whether a default judgment should be entered. These factors may include: "(1) possible prejudice to the plaintiff; (2) the merits of the plaintiff's claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Mucerino v. Newman*, No. 3:14-CV-00028, 2017 WL 387202, at *2 (M.D. Tenn. Jan. 26, 2017) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)); *see also Versah, LLC v. UL Amin Indus.*, No. 220CV12657TGBRSW, 2021 WL 3885865 at *3 (E.D. Mich. Aug. 31, 2021).

## V. ARGUMENT

### A. Plaintiff is Entitled to Judgment Against the Defaulting Defendants

Plaintiff is entitled to default judgment against the Defaulting Defendants. A default was entered by the Clerk on Plaintiff's behalf (D.E. 210), and the Plaintiff has established that this

Court has jurisdiction over this action and the Defaulting Defendants. (Amended Compl. ¶¶ 11-14).

"With respect to a defendant who has not entered an appearance, the court must determine whether it has jurisdiction over that defendant before entering a judgment by default against him." *Mucerino v. Newman*, 2017 WL 387202 at \*1. When a default is entered, the Complaint's well pleaded allegations, including jurisdictional averments, are deemed to have been admitted by the defendants. *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d at 670.

The Court properly has jurisdiction over Plaintiff's claims. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1338, and supplemental jurisdiction over Plaintiff's state law claims of unfair competition under 28 U.S.C. § 1367. (Amended Compl. ¶ 11). This Court may properly exercise personal jurisdiction over the Defaulting Defendants as they conduct business or intentionally direct infringing conduct toward consumers in this District. (Amended Compl. ¶ 12). Additionally, venue is proper in this Court under 28 U.S.C. § 1391. (Amended Compl. ¶ 13). Because default was entered against the Defaulting Defendants, and no objections have been made, jurisdiction is proper in this Court and Plaintiff is entitled to request an entry of default judgment against the Defaulting Defendants.

### B. Default Judgment is Proper

An entry of default judgment is proper in this action. The factors that courts consider when determining whether to enter default judgment, pursuant to Federal Rule of Civil Procedure 55, weigh heavily in Plaintiff's favor. As set forth below, the Complaint, Pleadings, and Declaration of G. Edward Powell III in Support of Default Judgment ("Powell Default Dec.") clearly demonstrate that Grand Isle Games, LLC has satisfied each factor. Therefore, default judgment should be entered against the Defaulting Defendants and remedies should be awarded.

### 1.  Possibility of Prejudice to Plaintiff

Plaintiff will experience prejudice and ongoing harm if default judgment is not entered against the Defaulting Defendants.

Courts have found this factor to weigh in plaintiffs' favor where (1) defendants were given multiple opportunities and extensive time to respond or defend and failed to do so, and (2) where plaintiffs invested significant resources in litigating their case, including preparing for "hearings, submitting multiple filings to [the] Court, and keeping the Court apprised of their efforts to contact and communicate with Defendants." *Versah, LLC v. UL Amin Indus.*, 2021 WL 3885865 at *3.

In this case, Plaintiff filed the Sealed Complaint on April 16, 2025 (D.E. 9) and then filed an Amended Complaint (D.E. 153) on August 12, 2025. The Defaulting Defendants have had ample time to appear in this suit. As a result of the Defaulting Defendants' infringing conduct, Plaintiff continues to experience lost sales, erosion of goodwill, dilution of its brand, and consumer confusion. (Amended Compl. ¶¶ 38-42; Way-Kiani Decl. Ex. C). Absent an entry of default judgment, Plaintiff will be left without any remedy for the ongoing harm it has suffered as a result of the Defaulting Defendant's infringing conduct. Plaintiff has also expended significant resources litigating this case.

The first factor, the possibility of prejudice to Plaintiff, weighs in favor of granting Plaintiff's Motion for Default Judgment.

### 2.  Allegations and Substantive Merits of Claims

Plaintiff's factual allegations in the Amended Complaint are well pleaded and supported for each claim of infringement. Even when pleaded factual allegations are accepted as true, "the Court must still determine whether those facts are sufficient to state a claim for relief with respect to plaintiff's claims." *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d at 672. Plaintiff has alleged

sufficient facts to support the finding of trademark infringement, copyright infringement, and trade dress infringement. Therefore, the second and third factors weigh in favor of Plaintiff.

### (a) Trademark

To succeed on its trademark infringement claim, Plaintiff must show (1) it owns a registered trademark, (2) Defendants used the mark or a similar variant thereof in commerce in connection with the sale or advertising of goods, and (3) Defendants' use is likely to cause consumer confusion. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009); *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). Under the Lanham Act, "[a] 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Plaintiff has alleged sufficient facts to establish ownership of the Mark. Evidence of trademark registration constitutes "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115. Plaintiff has clearly alleged and provided evidence that the specific Defaulting Defendants identified in the Exhibit B[1] ("Trademark Defendants") have utilized the Mark, or substantially indistinguishable versions like "Qless" on both their counterfeit products and in online listings on major e-commerce platforms. (Amended Compl. ¶ 32; Powell TRO Decl. ¶¶ 2, 3(b), Exs. 1-2). Plaintiff has met the first and second prongs for a trademark infringement claim involving a counterfeit mark.

The record further demonstrates that Plaintiff has alleged and provided direct evidence of the likelihood of confusion of consumers resulting from the Trademark Defendants' infringing conduct.

---

[1] Attached hereto as Exhibit B is a true and correct list of the Defaulting Defendants who have infringed Plaintiff's trademark rights by using a counterfeit of Plaintiff's Mark.

In analyzing the likelihood of confusion, Courts consider eight factors. These factors are: "(1) strength of the plaintiff's mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines or services." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264–65 (6th Cir. 2021).

The factors weigh in favor of the Plaintiff establishing the likelihood of confusion prong. The Trademark Defendants have in fact used the literal Q-Less® mark. (Amended Compl. ¶¶ 30, 65). Where a defendant intentionally copies a plaintiff's mark with intent to benefit from the plaintiff's reputation, a likelihood of confusion is presumed. *Ford Motor Co. v. Lloyd Design Corp.*, 22 F. App'x 464, 468 (6th Cir. 2001). The use of the literal mark "no doubt establishes the strength, relatedness, and similarity elements." *Versah, LLC v. UL Amin Indus.*, 2021 WL 3885865 at *5. Additionally, Plaintiff has provided evidence that a likely degree of purchaser care exists. The various consumer complaints that Plaintiff received prove that consumers care about the use of Plaintiff's Mark on Defendants' inferior products. (Amended Compl. ¶ 38; Way-Kiani Decl. ¶¶ 5-6, Ex. C). Moreover, the Trademark Defendants marketed their infringing products in the same channels that Plaintiff employed. (Powell TRO Decl. ¶¶ 2, 3(b), Exs. 1-2). "Convergent marketing channels increase the likelihood of confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir. 1979)).

Plaintiff has sufficiently alleged that the Trademark Defendants' use of the Mark provides a basis for relief with respect to Plaintiff's trademark infringement claims.

**(b) Copyright**

A claim for copyright infringement requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

First, Plaintiff has provided records of its valid copyright registration certificates. The copyright registrations cover numerous original works used to promote the Product, including photographs, videos, and rules infographics with interlaced text. (Powell TRO Decl. ¶ 4, Exs. 3-12). "The registration certificates…are prima facie evidence of…ownership of valid copyrights." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007). By presenting the copyright registration certificates to the Court, Plaintiff has sufficiently established its ownership of the valid copyrights.

Second, Plaintiff has alleged that the Defaulting Defendants identified in Exhibit C[2] ("Copyright Defendants") have copied its copyrighted materials and distributed the infringing products in the United States without approval or authorization from Grand Isle Games LLC. (Amended Compl. ¶¶ 36, 75-76; Powell TRO Decl. ¶¶ 2, 3(a), 4, Exs. 1-2). Because the court must deem these allegations as admitted, Plaintiff has established the second element for copyright infringement.

Plaintiff has a meritorious claim and has adequately pled a cause of action for copyright infringement.

**(c) Trade Dress**

To establish trade dress infringement, Plaintiff must show (1) its trade dress is distinctive or has acquired secondary meaning, (2) the trade dress is nonfunctional, and (3) Defendants' trade dress is likely to cause confusion. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters,*

---

[2] Attached hereto is a true and correct list of the Defaulting Defendants who infringed each of Plaintiff's copyrights.

*Inc.*, 280 F.3d 619, 629 (6th Cir. 2002); *see also Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 735 (6th Cir. 2018).

For the first factor, Courts have found a mark can be distinctive in two ways: (1) if it is "inherently distinctive," meaning its "intrinsic nature serves to identify a particular source," or (2) "if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, 'in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself.'" *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 11 (1982)).

Plaintiff's Trade Dress is distinctive and has acquired secondary meaning through Plaintiff's exclusive use and promotion. (Amended Compl. ¶¶ 19, 70). The nature of Plaintiff's Trade Dress—the cylindrical tin shape, color (beige or silver), and the specific slogans arranged around the rim— serve to identify the dice game as a Q-Less® product. (Amended Compl. ¶¶ 19, 70). The specific slogans include "THE CROSSWORD SOLITARIE GAME," "TWELVE DICE" and "SERIOUS FUN." (Amended Compl. ¶ 31). These design elements of the Plaintiff's Trade Dress are arbitrary and non-functional. (Amended Compl. ¶ 70).

Plaintiff has clearly demonstrated that the Defaulting Defendants' copying of its Trade Dress has caused and is likely to cause confusion. Defaulting Defendants are selling products in packaging that directly copies the key elements of Plaintiff's Trade Dress. (Amended Compl. ¶¶ 31, 71; Powell TRO Decl. ¶¶ 2, 3(c), Exs. 1-2). This imitation of the overall visual impression is highly likely to cause consumer confusion regarding the source or affiliation of Defendants' products. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2019 WL 6050283, at *10-11 (M.D. Tenn. Nov. 15, 2019). Plaintiff has even provided direct

14

evidence of consumer confusion. Various customers have reached out to Plaintiff complaining about Defaulting Defendants' counterfeit products. (Amended Compl. ¶¶ 38, 71; Way-Kiani Decl. ¶¶ 5-6, Ex. C). Plaintiff has established a substantive and meritorious trade dress claim.

### 3. Sum of Money at Stake

Plaintiff seeks reasonable joint and several statutory damages for trademark counterfeiting and copyright infringement, and reasonable actual damages for trade dress infringement. The remedies requested should be awarded to Plaintiff upon entry of a default judgment.

### (a) Statutory Trademark Counterfeiting Damages

Plaintiff seeks a joint and several award of reasonable statutory damages against the Trademark Defendants who used a counterfeit Q-Less® Mark pursuant to 15 U.S.C. § 1117(c). Under the Lanham Act, a trademark owner can elect to recover statutory damages in lieu of actual damages, for the use of a counterfeit mark. 15 U.S.C. § 1117(c). "Several courts have found statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 882.

Statutory damages, in non-willful infringement cases, are "[n]ot less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). If willful infringement occurs, the maximum statutory damages that may be awarded increases to $2,000,000 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c)(2).

Courts award treble damages for trademark infringement where a defendant (1) intentionally uses a mark, (2) knowing that the mark used is a counterfeit mark under 15 U.S.C. § 1116(d), (3) in the sale, offer, or distribution of goods or services. *Chanel, Inc. v. Huang Cong*, No. 10-2086, 2011 WL 6180029, at *11 (W.D. Tenn. Dec. 8, 2011).

15

The Trademark Defendants intentionally used the Q-Less® mark and knew that the mark was being used as a counterfeit in the sale, offer, and distribution of goods. (Amended Compl. ¶¶ 30, 32-34, 65). Upon default, the Trademark Defendants have admitted that despite their knowledge of Plaintiff's rights in the Q-Less® mark, they have intentionally used the Q-Less® mark for the purpose of capitalizing on Plaintiff's goodwill and brand reputation. (Amended Compl. ¶¶ 21-23, 29, 42, 66). Therefore, Plaintiff may be entitled to receive damages for willful trademark infringement and treble damages.

Plaintiff, however, only requests statutory damages in the range available for non-willful infringement, in the amount of $100,000 for infringement of the Q-Less® mark. As Plaintiff has established willful infringement, the non-willful statutory award request for $100,000 per Mark is a reasonable award for a default judgment entry under these circumstances. *See Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, No. 1:14-CV-22859-JAL, 2014 WL 4948632, at *6-7 (S.D. Fla. Oct. 2, 2014) (granting default judgment and awarding $200,000 in statutory damages per Ray-Ban mark infringed); *see also Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 882 (awarding $100,000 each for each of the trademarks infringed). These reasonable statutory damages will discourage potential infringers from engaging in similar conduct. *See Luxottica Grp. S.p.A. v. Casa Los Martinez Corp.*, 2014 WL 4948632 at *5. The Court should hold the Trademark Defendants jointly and severally liable for trademark infringement involving a counterfeit mark and award $100,000 in statutory damages.

### (b) Statutory Copyright Damages

Plaintiff seeks an award of reasonable statutory damages against the Copyright Defendants who infringed its valid copyright registrations pursuant to 17 U.S.C. § 504. The Copyright Act provides:

> [T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). Courts have "wide discretion in setting damages within the statutory range set forth in § 504(c)(1)". *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 881. If a copyright owner proves that the defendants committed the infringement willfully, statutory damages may be awarded up to not more than $150,000. 17 U.S.C. § 504(c)(2); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 881.

Here, Plaintiff requests joint and several statutory damages of $20,000 for each copyrighted work infringed, assessed against the Copyright Defendants that infringed that particular work, for a total award of $240,000, to be awarded upon entry of default judgment. Plaintiff seeks less than the maximum amount of statutory damages available for non-willful copyright infringement. Therefore, Plaintiff's request is reasonable because of the Copyright Defendants repeated infringement of Plaintiff's intellectual property rights for financial gain. *See Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 921-22 (E.D. Tenn. 2006). Courts have issued similar awards for damages in various cases. *See Microsoft Corp. v. Sellers*, 411 F. Supp. 2d at 921-22 (awarding maximum amount of statutory damages for non-willful infringement under the Copyright Act— $30,000 for the two copyrights at issue, for a total of $60,000); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 882 (granting Microsoft reasonable statutory damages of $30,000 per copyright at issue); *HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 388 (S.D.N.Y. 2014) (holding that the award of $30,000 in statutory damages was a "reasonable reflection of the economic significance of [the] case"). The Court should hold the Copyright Defendants jointly and severally liable for copyright infringement and award statutory damages in

the amount of $20,000 per copyrighted work against the Copyright Defendants that infringed the particular works.

### (c) Trade Dress—Actual Damages

Plaintiff seeks actual damages for trade dress infringement pursuant to § 1117(a) of the Lanham Act. Here, Plaintiff respectfully requests the Court award damages against Defendant No. 168, Epslion, ("Epslion") for its infringing sales. *See* Powell Default Decl. ¶ 3-4, Ex. 1.

Plaintiff is entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action" as a result of the Defendant's use of Plaintiff's Trade Dress. 15 U.S.C. § 1117(a). Courts may enter judgment "for any sum above the amount found as actual damages, not exceeding three times such amount" in assessing defendant's profits. 15 U.S.C. § 1117(a). If the amount of the recovery is inadequate or excessive according to the circumstances "the court may in its discretion enter judgment for such sum as the court shall find to be just." 15 U.S.C. § 1117(a).

When establishing defendant's profits, the plaintiff is only required to provide proof of the defendant's gross revenues. *Id*; *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 471 (6th Cir. 2022). Plaintiff can meet this burden by "providing evidence of infringing sales activity and a reasonable estimate of Defendant['s] gross sales based upon the amount of infringing goods" that were imported [or sold] by Defendant. *See Djarum v. Dhanraj Imports, Inc.*, 876 F. Supp. 2d 664, 670 (W.D.N.C. 2012). The burden then shifts to defendants to prove any deductions from the provided gross revenue. *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 607 (6th Cir. 1991)

Plaintiff seeks to recover Defendant's profits from its total sale of infringing products for compensation for the injuries Plaintiff has sustained due to Defendant's continued trade dress infringement. *See Id*. at 606-607 ("[p]rofits are awarded under different rationales including unjust enrichment, deterrence, and compensation"). Plaintiff has met its burden and provided evidence

of the gross revenue Defendant received as result of its sales of thirty (30) infringing products. *See* Powell Decl. ¶ 3-4, Ex. 1. Defendant's gross revenue from its infringing sales is Four Hundred Thirty Dollars and Eighty-Seven Cents ($430.87). *Id*. Therefore, the damages award Plaintiff requests is reasonable.

### 4. Dispute of Material Facts

The fifth factor, the possibility of a dispute concerning the material facts, weighs in Plaintiff's favor for an entry of default judgment.

Courts have found this factor to weigh in plaintiffs' favor where the undisputed record is robust, and defendants have "made no effort to [mount a defense] until well after the clerk's entry of default." *Versah, LLC v. UL Amin Indus.*, 2021 WL 3885865 at *4.

Here, the Defaulting Defendants have failed to respond or defend themselves in this action. (D.E 210). As a result, the Defendants have made no effort to dispute the record or allege any defenses against Plaintiff's intellectual property infringement claims. Accordingly, no dispute concerning the material facts is present in this action.

### 5. Excusable Neglect

The sixth factor, excusable neglect, weighs in Plaintiff's favor for entry of default judgment. Defendants' failure to appear or defend an action where they were properly served is "indicative of actual disregard rather than excusable neglect." *Buzz Seating, Inc. v. DCI, Inc.*, No. 1:24-CV-00555-JPH, 2025 WL 1191026 at *6 (S.D. Ohio Apr. 24, 2025). Plaintiff properly served and gave notice to the Defaulting Defendants of this action. The Defaulting Defendants have failed to appear or defend this action, demonstrating actual disregard.

### 6. Public Policy

The final factor weighs in Plaintiff's favor for entry of default judgment. It is well established that there is a strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

> [T]he Court must account for "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." By its nature, default judgment conflicts with merits-based decisions. But in cases such as this, where Defendant has shown no interest in pursuing a decision on the merits, it is appropriate to consider the need for judicial efficiency and the needs of the litigants that have actually appeared before the Court.

*Buzz Seating, Inc. v. DCI, Inc.*, 2025 WL 1191026 at *6 (citations omitted). Courts have been compelled to resolve cases through default judgment where defendants have not articulated any mitigating factors that weigh against default judgment. *Id*.

The Defaulting Defendant's failure to respond has made a decision on the merits impossible. As a result of their failure to respond, the Defaulting Defendants have squandered their opportunities for a merit-based resolution. *Versah, LLC v. UL Amin Indus.*, 2021 WL 3885865 at *4. Furthermore, the Defaulting Defendants have failed to establish any mitigating factors that would weigh against an entrance of default judgment in Plaintiff's favor.

### C.    Plaintiff is Entitled to a Permanent Injunction

Plaintiff properly seeks a permanent injunction against the Defaulting Defendants. The trademark, trade dress, and copyright infringement framework, pursuant to 15 U.S.C. § 1116, 15 U.S.C. § 1125(a) and 17 U.S.C. § 502, respectively, allows Courts to grant permanent injunctive relief as part of the remedies sought for a default judgment.

Courts have discretion to grant or deny permanent injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. at 391. For a Court to grant a permanent injunction, the Plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law,

such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*.

First, Plaintiff has suffered irreparable harm. Irreparable harm is presumed under copyright[3] and trademark infringement.[4] Plaintiff has alleged that the Defaulting Defendants' actions have caused and will continue to cause Plaintiff irreparable harm to its goodwill and brand reputation. (Amended Compl. ¶¶ 42, 68, 73). Additionally, Plaintiff has established a likelihood of confusion and Defendants have offered no argument to rebut the presumption of irreparable harm under copyright and trademark infringement. The first factor weighs in favor of Plaintiff's request for permanent injunction.

Second, no adequate remedy at law exists for Plaintiff under these circumstances. "[W]here there is potential for future harm from infringement, there is no adequate remedy at law." *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 882. Plaintiff faces potential future harm from the Defaulting Defendants continued infringing activities. The Defaulting Defendants have made the potential harm to Plaintiff widespread through their use of various websites and platforms to carry out their infringing activities. *See Id*. at 882-883. This factor weighs in favor of Plaintiff's request for permanent injunction.

The third factor, the balance of hardships, weighs in Plaintiff's favor. A permanent injunction will not cause harm to the Defendants. The injunction "will merely require Defendant to comply with the Copyright Act and Lanham Act." *Id*. at 883. However, Plaintiff Grand Isle

---

[3] "[C]opyright infringement is presumed to give rise to irreparable injury." *Capitol Recs., Inc. v. Zahn*, No. 3:06-0212, 2007 WL 542816 at *4 (M.D. Tenn. Feb. 16, 2007).

[4] A plaintiff seeking a permanent injunction is entitled to a rebuttable presumption of irreparable harm upon a finding of trademark infringement. 15 U.S.C. § 1116(a). Furthermore, the Sixth Circuit has held that "irreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from trademark infringement or unfair competition. *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 882 (*citing Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir.1999)).

Games LLC faces continued hardship from the loss of sales resulting from the Defaulting Defendants' conduct. The Defaulting Defendants used Plaintiff's Trade Dress, Copyrighted Materials, and Mark on its goods, which diverted customer sales from Plaintiff's genuine product. A permanent injunction is necessary to adequately prevent Plaintiff from experiencing further hardship.

Finally, a permanent injunction is necessary to protect public interests. Granting Plaintiff's permanent injunction will advance the public interest in upholding the fundamental purposes of trademark and copyright law. *See Capitol Recs., Inc. v. Zahn*, No. 3:06-0212, 2007 WL 542816 at *4 (M.D. Tenn. Feb. 16, 2007); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d at 883. Because the four factors weigh in Plaintiff's favor, the Court should grant Plaintiff's request for a permanent injunction against the Defaulting Defendants.

## VI.     REQUESTED RELIEF

WHEREFORE, Plaintiff Grand Isle Games, LLC respectfully requests that this Court grant default judgment against the Defaulting Defendants (Ex. A) providing the following relief:

1. **Permanently Enjoining Defendants**, their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them from:

    a.  Manufacturing, importing, advertising, promoting, distributing, offering for sale, or selling any products bearing the Q-Less® Mark (U.S. Reg. No. 6,038,633), or any confusingly similar variations thereof;

    b. Using Plaintiff's Trade Dress (including the cylindrical tin shape, beige or silver color, and arrangement of slogans "THE CROSSWORD SOLITARIRE GAME," "TWELVE DICE," "SERIOUS FUN") or any confusingly similar trade dress in connection with the sale or offering for sale of any unauthorized products;

c. Copying, reproducing, distributing, displaying, or making derivative works of Plaintiff's Copyrighted Works (including those identified in the Powell TRO Decl., Exs. 3-12 (D.I. 14.3-14.12)) in connection with the advertising, promotion, offering for sale, or sale of any unauthorized products;

d. Using any false designation of origin or false description that is likely to cause confusion regarding the affiliation, connection, or association of Defendants' products with Plaintiff;

e. Assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to above.

2. **Awarding Damages to Plaintiff** as described herein:

   a. **Trademark Infringement.** Award Plaintiff $100,000 in statutory damages against the Trademark Defendants (Ex. B), who used a counterfeit of Plaintiff's Mark, each jointly and severally liable, pursuant to 15 U.S.C. § 1117(c).

   b. **Copyright Infringement.** Award Plaintiff $20,000 per copyrighted work in statutory damages against the Copyright Defendants (Ex. C) that infringed that particular work, for a total award of $240,000, with each Copyright Defendant jointly and severally liable for the judgments pertaining to the works that they infringed, pursuant to 17 U.S.C. § 504(c)(1).

   c. **Trade Dress Infringement.** Award Plaintiff $430.87 against the Defendant No. 168, Epslion, for trade dress infringement, pursuant to 15 U.S.C. § 1117(a).

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Default Judgment and issue the proposed Default Judgment Order and the proposed Permanent Injunction Order submitted herewith.

Dated: May 15, 2026

Respectfully submitted,

*/s/ G. Edward Powell III*

Chanelle R. Acheson (BPR No. 30008)
W. David Bridgers (BPR No. 16603)
G. Edward Powell III (CA Bar #324530)
**Waddey Acheson LLC**
1030 16th Ave S, Suite 300
Nashville, TN 37212
615-839-1100
ed@waddeyacheson.com
Counsel for Plaintiff Grand Isle Games, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2026, a true and correct copy of the foregoing PLAINIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS will be served upon the Defendants listed in Schedule A to the Complaint on any party that has appeared via ECF or via the alternative methods of service previously authorized by this Court's Order dated April 22, 2025, including service by electronic mail to the email addresses identified for each Defendant and/or by publication, as set forth in said Order.

*/s/ G. Edward Powell III*
G. Edward Powell III (CA Bar #324530)